**2023-1160**

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

ANTHONY W. KNOX,
*Petitioner*,

v.

DEPARTMENT OF JUSTICE,
*Respondent*.

Petition for Review of the Merit Systems Protection Board in
No. SF-4324-20-0191-I-3
Administrative Judge Franklin M. Kang

BRIEF OF PETITIONER
ANTHONY KNOX

Kevin E. Byrnes, Esq.
Grace H. Williams, Esq.
Fluet
1751 Pinnacle Drive, Suite 1000
Tysons, VA 22102
Telephone: (703) 590-1234
*Counsel for Petitioner*

August 29, 2023

# CERTIFICATE OF INTEREST

Counsel for Petitioner Anthony Knox certifies the following:

1. The full name of every party or amicus represented by me is:

Anthony Knox

2. The name of the real party in interest represented by me is:

Anthony Knox

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party represented by me are:

Not applicable.

4. The names of all law firms and the partners or associates that appeared for the party now represented by me in the trial court or agency or are expected to appear in this Court are:

Fluet & Associates, PLLC (d/b/a Fluet)
Kevin E. Byrnes, Partner
Grace H. Williams, Senior Associate

5. The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. *See* Fed. Cir. R. 47. 4(a)(5) and 47.5(b).

None.

6. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

None.

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ................................................................... i

TABLE OF CONTENTS ......................................................................... ii

TABLE OF AUTHORITIES ..................................................................... iv

STATEMENT OF RELATED CASES ........................................................1

STATEMENT OF JURISDICTION ...........................................................2

STATEMENT OF ISSUES .........................................................................3

STATEMENT OF THE CASE ...................................................................4

   I.  Introduction ....................................................................................4

     A.  Knox Prevailed on his WGI Claim. .........................................5

     B.  Had the WGI been processed correctly, Knox's promotion to GS-13 was reasonably certain. ...........................................................................5

     C.  The AJ demonstrated bias against Knox, and abused his discretion in his rulings. ..................................................................................6

   II.  Fact Statement ...............................................................................8

   III.  Procedural Summary ...................................................................11

SUMMARY OF THE ARGUMENT ........................................................11

ARGUMENT ..........................................................................................13

   I.  Standard of Review ......................................................................13

   II.  USERRA Discrimination and Reemployment Standards .............14

     A.  USERRA Discrimination Cases ...............................................14

     B.  USERRA Reemployment Cases ..............................................17

     C.  Regulatory Provisions .............................................................18

   III.  The Administrative Judge's decision that the Agency's failure to afford Knox a within-grade-increase during his military service violated USERRA, but denial of his promotion did not, is not supported by substantial evidence. .........19

   IV.  The AJ's denial of Knox's discrimination claims was not supported by substantial evidence. ............................................................................26

V.   The AJ's Discovery Rulings were Arbitrary, Capricious and an Abuse of Discretion. ........................................................................................ 30

   A.   Board Procedures Establish the basis for Orderly Discovery and Fair Motions Practice. .............................................................................. 30

   B.   Improperly Denying or Restricting Discovery is an Abuse of Discretion. . 33

   C.   Appellant's Prodigious Attempts at Discovery. ......................................... 35

   D.   COVID-19 Was Not Seen as Good Cause for Either Delaying the Proceedings nor Extending Discovery. This was error. ................................... 42

   E.   The Abuse of Discretion during the Conference Call on May 17, 2022. ... 44

   F.   The Actions of AJ Kang cumulatively amount to an Abuse of Discretion. 47

VI.   The Administrative Judge erred when he ruled a defense of laches would apply as the agency abandoned the defense, thereby waiving it. ......................... 50

CONCLUSION ...................................................................................... 51

# TABLE OF AUTHORITIES

**Cases**

*Allen v. U.S. Postal Serv.*,
142 F.3d 1444 (Fed. Cir. 1998)...............................................................16

*Baird v. Department of Army*,
517 F.3d 145 (Fed. Cir. 2008)................................................................34

*Beck v. Dep't of Navy*,
997 F.3d 1171 (Fed. Cir. 2021)....................................................... 27, 47

*Becker v. Department of Veterans Affairs*,
474 Fed. Appx 761 (Fed. Cir. 2012).....................................................47

*Becwar v. Department of Labor,*
115 M.S.P.R. 689 (2011) .......................................................................25

*Brown v. Dep't of Air Force*,
88 M.S.P.R. 22 (2001) .............................................................................6

*Campbell v. Merit Sys. Prot. Bd.*,
27 F.3d 1560 (Fed. Cir. 1994).................................................................13

*Carroll v. Delaware River Port Auth.*,
843 F.3d 129 (3d Cir. 2016)...................................................................16

*Clavin v. U.S. Postal Serv.*,
99 M.S.P.R. 619 (MSPB 2005)...............................................................11

*Coffman v. Chugach Support Servs.*,
411 F.3d 1231 (11th Cir. 2005) .............................................................15

*Coffy v. Republic Steel*,
447 U.S. 191 (1980)................................................................................18

*Consol. Edison Co. v. Nat'l Labor Rels. Bd.*,
305 U.S. 197 (1938)................................................................................13

*Curtin v. Office of Pers. Mgmt.,*
    846 F.2d 1373 (Fed. Cir. 1988) ................................................ 34, 47

*Erickson v. U.S. Postal Service,*
    571 F.3d 1364 (Fed. Cir. 2009) ............................................. *passim*

*Goggin v. Lincoln St. Louis,*
    702 F.2d 698 (8th Cir. 1983) ......................................................18

*Harper v. Dep't of the Navy,*
    101 M.S.P.R. 166 (2006) ..............................................................6

*Hayden v. Dep't of Air Force,*
    812 F.3d 1351 (Fed. Cir. 2016) ............................................ 23, 30

*Hayes v. Dep't of the Navy,*
    727 F.2d 1535 (Fed. Cir. 1984) ..................................................13

*Huhmann v. Fed. Express Corp.,*
    874 F.3d 1102 (9th Cir. 2017) ....................................................29

*Jenkins v. EPA,*
    118 M.S.P.R. 261 (2012) ..............................................................33

*Kirkendall v. Department of Army,*
    573 F. 3d. 1318 (Fed. Cir. 2009) ................................................47

*Kiser v. Department of Education,*
    66 M.S.P.R. 372 (1995) .......................................................... 33, 38

*Mangano v. Department of Veterans Affairs,*
    104 M.S.P.R. 316 (2006) ..............................................................33

*McGuffin v. Soc. Sec. Admin.,*
    942 F.3d 1099 (Fed. Cir. 2019) ...................................... 13, 14, 15

*McMillan v. Dep't of Just.,*
    812 F.3d 1364 (Fed. Cir. 2016) ............................................ 15, 16

*Oliver v. Department of Transportation,*
    1 M.S.P.R. 382 (1980) ..................................................................46

*Petty v. Metro. Gov't of Nashville-Davidson Cty*,
    538 F.3d 431 (6th Cir. 2008) ................................................. 15, 23

*Pomrening v. United Air Lines, Inc.*,
    448 F.2d 609 (7th Cir. 1971) ................................................. 21, 22

*Rassenfoss v. Dept. of Treasury*,
    121 M.S.P.R. 512 (2014) ................................................. 5, 17, 20

*Sharpe v. Dep't of Just.*,
    916 F.3d 1376 (Fed. Cir. 2019) .................................................48

*Sheehan v. Dep't of Navy*,
    240 F.3d 1009 (Fed. Cir. 2001) ................................. 12, 14, 15, 27

*Smith v. Gen. Servs. Admin.*,
    930 F.3d 1359 (Fed. Cir. 2019) .................................................13

*TAG/ICIB Services, Inc. v. Pan Am. Grain Co., Inc.*,
    215 F.3d 172 (1st Cir. 2000) .................................................6

*Tierney v. Dep't of Justice*,
    89 M.S.P.R. 354 (2001) .................................................6

*Tilton v. Mo. Pac. R.R. Co.*,
    376 U.S. 169 (1964) ................................................. 21, 22

*U.S. Bank Nat. Ass'n v. Village at Lakeridge, LLC*,
    2018 WL 1143822, *5 (Mar. 5, 2018) .................................................13

*White v. Government Printing Office*,
    108 M.S.P.R. 355 (2008) .................................................33

*Whitmore v. Dep't of Labor*,
    680 F.3d 1353 (Fed. Cir. 2012) ................................. 34, 47, 48

**Statutes**

20 C.F.R. § 1002.191 .................................................29
20 C.F.R. §1002.18 .................................................18
28 U.S.C. § 1295(a)(9).................................................2

28 U.S.C. 1746 ................................................................................32

38 U.S.C. §§4301-4335 .............................................. *passim*

5 C.F.R. §353.106(c) ............................................... 18, 19

5 CFR § 1201.71-75 .................................................. *passim*

**Rules**

Fed. R. Civ. P. 30(b)(6) .................................................................39

## STATEMENT OF RELATED CASES

Petitioner Anthony Knox prevailed on one of his claims before the MSPB, (MSPB Docket No., SF-4324-20-0191-I-3) and sought his reasonable attorney's fees (MSPB Docket No. SF-4324-20-0191-A-1). The Administrative Judge required two rounds of briefing on the issues, then dismissed the attorney's fees petition without prejudice, nor issuing a decision on the merits, pending the outcome of appeal to the Federal Circuit. Thus, the MSPB retains jurisdiction on the issue of Knox's attorney's fees with stated intention to analyze the outcome here to inform its future decisions on that case.

Aside from the above matter, there is no other appeal in or from the same MSPB proceeding previously before this or any other appellate court. There are no known cases pending in this or any other court or agency that will directly affect or be directly affected by this Court's decision in the pending appeal.

## STATEMENT OF JURISDICTION

This is an action to review a final order of the Merit System Protection Board ("MSPB" or "Board").

On January 3, 2020, Petitioner Anthony Knox filed a complaint before the MSPB alleging violations of the Uniformed Services Employment and Reemployment Rights Act ("USERRA"). Appx88-135. Knox's appeal asserted that his employer, the Drug Enforcement Administration ("DEA" or "Agency") violated the Uniformed Service Employment and Reemployment Rights Act 38 U.S.C. §§4301-4335 ("USERRA") when it failed to afford him a within grade increase, and later a promotion, due to his qualifying military service in the Air Force Reserves. *Id*. He prevailed on the within grade increase claim, but not the promotion claim. Appx1-2. The Board has jurisdiction over Knox's appeal pursuant to 38 U.S.C. §§4312 and 4324(b). *Id*.

On September 21, 2022, Administrative Judge ("AJ") Franklin Kang issued a decision on the parties' written submissions. Appx1-28. The Initial Decision granting in part and denying in part Knox's request for corrective action. *Id*. Knox filed a timely Petition for Review with this Court, which it received on November 18, 2022. *Id*. This Court has jurisdiction pursuant to 28 U.S.C. § 1295(a)(9) and 5 U.S.C. § 7703(b)(1)(A).

**STATEMENT OF ISSUES**

1.      Whether the MSPB's determination that the Agency's failure to promote Knox to a GS-13 position following his deployment for qualifying military service did not violate USERRA, is supported by substantial evidence.

2.      Whether the MSPB's denial of discovery on certain matters was an abuse of discretion.

3.      Whether MSPB's decision denying the within grade increase discrimination claim was supported by substantial evidence.

4.      Whether the MSPB's decision denying the promotion claim while granting the within grade increase reemployment claim was an abuse of discretion, arbitrary or capricious.

# STATEMENT OF THE CASE

## I.    Introduction

Anthony Knox was a Drug Enforcement Administration ("DEA") Special Agent (GS-1811 series Criminal Investigator) who also served in the Air Force Reserves. Appx2. While employed at DEA, SA Knox was mobilized and deployed in support of Operation Iraqi Freedom. *Id.*, *see also* Appx93. In the years before his deployment, Knox had received his previous within-grade-increases on schedule (GS-12, Step 1 was granted February 25, 2001, and GS-12 Step 2, was granted February 24, 2002). Appx170. He deployed for military service in November 2002, and he returned to his DEA position in November 2003. Appx169. Thus, he was on active duty on February 23, 2003. *Id.* On that date, by the agency's own admission, Knox was entitled to receive an automatic within-grade-increase ("WGI"). *See* Appx99-100, Appx767, Appx769, Appx770. The agency failed to grant it to him. Appx1316. Instead, his WGI was delayed until April 20, 2003. Appx102, Appx770, Appx1285. This delay would have a cascading effect, not only preventing him from receiving his automatic WGI on time, but also causing delay in his promotion to GS-13, which was reasonably certain to occur had the WGI been granted as required. Appx1274-1328.

## A.    Knox Prevailed on his WGI Claim.

For the denial of his WGI, and his promotion, Knox filed an MSPB appeal, alleging violations of USERRA including both discrimination claims and reemployment claims for each personnel action. Appx169-171. Specifically related to the WGI, Knox proved, "….he (1) performed duty in the United States Air Force, (2) that he lost a benefit of employment when his automatic within-grade increase to GS-12 Step 3, due on February 23, 2003, was delayed for approximately two months, and (3) his then-absence for active duty uniformed service was the reason for the delay in his within-grade-increase to GS-12 Step 3." Appx171. The agency ultimately conceded the WGI was improperly delayed and conceded denying the WGI was a mistake and violated USERRA. Appx1297.

## B.    Had the WGI been processed correctly, Knox's promotion to GS-13 was reasonably certain.

For his promotion claim, Knox presented credible evidence that like the WGI, his promotion to GS-13 position was reasonably certain, yet the agency did not grant it, in violation of USERRA. The delay of the WGI was pivotal for the promotion to GS-13 as well, because attaining the WGI as required would have rendered Knox eligible for promotion in February 2004. Appx305-306. Under the DEA's promotion policy in place during February 2004, Knox's promotion from GS-12, step 3, to GS-13 was reasonably certain as a generally granted benefit of employment. Appx174. *See Rassenfoss v. Dept. of Treasury*, 121 M.S.P.R. 512, at 519 (2014). The AJ

5

disregarded uncontradicted evidence Knox presented that his promotion to GS-13 was reasonably certain, which was harmful error to Knox.

**C.     The AJ demonstrated bias against Knox, and abused his discretion in his rulings.**

The AJ demonstrated bias against Knox throughout the process, and abused his discretion in his decisions on discovery, and by improperly relying on inappropriate or unsupported legal standards. By refusing to permit Knox to obtain necessary discovery, the AJ abused his discretion and prejudiced Knox's ability to obtain relevant evidence. Furthermore, the AJ took it upon himself to assert an affirmative defense of laches even after the agency had abandoned it. The agency produced no evidence whatsoever supporting the defense of laches in discovery or its closing pleadings, and seemingly abandoned that defense early in the case. There is no statutory time limit for filing an MSPB appeal under USERRA. Appx1240, Appx1312. *Harper v. Dep't of the Navy*, 101 M.S.P.R. 166, ¶ 7 (2006) (*citing Tierney v. Dep't of Justice*, 89 M.S.P.R. 354, ¶ 6 (2001)). Furthermore, the Board has previously stated, "courts are loath to apply a presumption of laches in any case where the statutory period for filing has not expired." *Brown v. Dep't of Air Force*, 88 M.S.P.R. 22 (2001) (citing *TAG/ICIB Services, Inc. v. Pan Am. Grain Co., Inc.*, 215 F.3d 172, 175 (1st Cir. 2000)). The AJ's Initial Decision concerning the defense of laches was also contradictory and unsupported by substantial evidence. First, the AJ found that laches did not apply because the agency could not show prejudice,

then later stated that he would have determined laches would prevent Knox from prevailing because the agency would be able to show prejudice due to the passage of time. Appx16.

The Initial Decision's language on laches is difficult to reconcile and appears arbitrary. The Initial Decision both states, "Because laches requires that the agency prove both inexcusable delay and prejudice, the agency's failure to prove prejudice precludes a finding of laches." Appx10. Yet later, when evaluating the failure to promote claim, the Initial Decision also stated, "If I were to assume that the appellant could show substantial or motivating factor, that would then require the agency to prove that it would have done the same thing anyway. On this analysis, I would find that the agency could establish prejudice for purposes of laches." Appx16. Yet the agency itself presented no evidence of prejudice, and the decision identifies none. Appx1-28. Thus, the AJ's findings on prejudice are not supported by substantial evidence and should be reversed. Similarly, the AJ's findings did not even address Knox's evidence or related analysis pertaining to discrimination on his WGI claims.

Accordingly, Knox seeks to have the Initial Decision concerning his promotion claim reversed. Should the Federal Circuit deem this matter suitable for remand, Knox requests remand to a different AJ, as the AJ's actions in this case demonstrated Knox will not receive a fair hearing on remand.

## II.    Fact Statement

Anthony Knox was hired as a DEA Special Agent in October 1997, as a GS-7, 1811 Series Criminal Investigator. Appx1262. From his initial employment until November 2006, Knox was also an enlisted member of the U.S. Air Force Reserves, 304th Para-Rescue Team, operating out of Portland, Oregon. *Id*., *see also* Appx105-Appx250. As his career progressed, Knox was promoted to higher grade levels, attaining a promotion to GS-12 on February 25, 2001. Appx1262. Starting in March 1998, Knox served continuously under Special Agent in Charge ("SAC") John M. Bott at the Seattle Field Division, Portland District Office. Appx1316. In March 1998, Knox's Group Supervisor ("GS") Kenneth Magee was elevated to the position of Assistance Special Agent in Charge ("ASAC"). *Id*. In 1999, Lori Cassity became Knox's Group Supervisor. *Id*.

In support of Operation Iraqi Freedom, Knox was deployed and engaged in military service from December 11, 2002, to November 21, 2003. Appx250, Appx1316. During this time, the DEA placed Knox in non-pay status, Leave Without Pay for Uniformed Service ("LWOP-US"). *Id*. On February 23, 2003, Knox should have been granted a WGI to GS-12, Step 3. *Id*., *See also* Appx99-100. He was not. *Id*. Instead, he had been awarded his WGI late, on April 20, 2003. Appx265, Appx769. At the time, GS Cassity advised him that "there was no way

to change the effective date for a step increase or to recover lost wages from the administrative delay in my step increase from GS-12/02 to GS-12/03." Appx1316.

The Agency conceded that Knox was improperly prevented from receiving his WGI. Appx10. Specifically, it admitted that "under the escalator principle of USERRA, SA Knox should have received his within-grade step increase to GS-12 Step 3 without delay in February 2003." *Id*.

In March 2004, GS Cassity advised Knox to wait to submit his promotion package until April 2004, because she mistakenly believed he was eligible for consideration beginning in April, rather than the correct month, February. Appx16.

During his April 2004 promotion application, Knox received the support of GS Cassity, ASAC Magee, and SAC Bott. Appx1316.

As of February 23, 2003, the DEA had policies concerning promotion for 1811 Series Agents which stated the criteria for promotion, which Knox met as of that date. Appx835. *See also* Appx857.

For the years where data was provided by the agency, the DEA had approved promotion for eligible 1811 series GS-12 applicants, with a year of service at Step 3, at the rates summarized below (Appx644, Appx710-711):

| DEA SPECIAL AGENTS | | | | |
|---|---|---|---|---|
| **YEAR** | **Three Year (Journeyman)** | | | |
| | **Approved** | **%** | **Disapproved** | **%** |
| **2003** | 333 | 99% | 3 | 1% |
| **2002** | 278 | 98% | 5 | 2% |
| **2001** | 152 | 99% | 1 | 1% |
| **1999** | 17 | 88% | 2 | 12% |
| **1998** | 83 | 99% | 1 | 1% |
| **1997** | 252 | 99% | 2 | 1% |
| **1996** | 271 | 98% | 6 | 2% |

On June 15, 2004, the DEA altered its promotion policies and guidance, making it discretionary for GS-12 step 3 eligible 1811 series agent to attain the GS-13 grade level. Appx254. The policy stated, "Promotions to GS-13 will be approved only after a GS-12 Special Agent has been in grade at least one year and has demonstrated competencies to perform at the GS-13 level." *Id*. In effect, the new policy made significant changes to the promotion policies, and the likelihood of promotion to GS-13 was reduced. Appx254-255.

Anthony Knox identified a colleague he attended Basic Agent Training ("BAT") alongside, who was a classmate of his with a similar career trajectory but who was not deployed. Appx1318. Special Agent Patrick Campbell was promoted to GS-13 as of March 21, 2004. Appx1163, Appx1318.

Anthony Knox was promoted to GS-13 in April 2016, and retired from the DEA after 24 years of service on December 31, 2020. Appx251, Appx1265.

### III.    Procedural Summary

Knox initially pursued corrective action at the time through his chain of command but was told by GS Cassity it was not possible to change the date of his WGI to be accurate. Appx99-100, Appx1318. Fearful of retaliation, Knox was concerned filing a formal claim would derail his career and did not believe that he had the resources to fight a USERRA appeal against his agency. Appx1316-1318. After retirement, Knox filed his USERRA appeal on his own on January 3, 2020 (SF-4324-20-0191-I-1). The Initial Appeal was dismissed without prejudice twice pursuant to an agreement between the parties as set forth in the Board's record. Appx1. *See also* Appx88-135 (Initial Appeal (I-1)), and Appx434-Appx543 (Initial Decision (I-1)); Appx545-547 (Refiled Appeal), and Appx558-567 (Initial Decision on Refiled Appeal, (SF-4324-20-0191-I-2)); and Appx569-571 (Second Refiled Appeal Acknowledgment Order) and Appx1-28 (Initial Decision on Second Refiled Appeal (SF-4324-20-0191-3)).

### SUMMARY OF THE ARGUMENT

USERRA discrimination and reemployment cases differ in two critical ways. For reemployment cases, the agency has the burden of showing it met its statutory obligations to reemploy eligible returning employees and the agency's motives in failing to reemploy the employee are irrelevant. (*See Clavin v. U.S. Postal Serv.*, 99 M.S.P.R. 619, 623 ¶ 6 (MSPB 2005)). For discrimination cases,

11

the employee bears the burden, by preponderant evidence, that the military service was a substantial and motivating factor in the adverse employment action. The agency must then prove it would have taken the same action for a valid reason. *Sheehan v. Dep't of Navy*, 240 F.3d 1009, 1013 (Fed. Cir. 2001). Knox brought both discrimination and reemployment claims related to his WGI delay, and the agency's failure to promote him in 2004.

The agency conceded the WGI delay was improperly withheld but did not concede the promotion claim. Appx10. Knox demonstrated that his WGI was delayed due to his military service, and that this in turn delayed his promotion. Appx92, Appx171, Appx205, Appx712, Appx1295. The AJ appropriately found the WGI was incorrectly delayed, but only under a reemployment theory, not a discrimination theory. Appx2. The AJ simply never acknowledged Knox's evidence supporting a discrimination theory for the WGI delay and ruled for the agency on the promotion claim. Appx92, Appx171, Appx205, Appx712, Appx1295. If the agency had properly afforded Knox his WGI, then his promotion would have been reasonably certain. *Id*., *see also* Appx1302-1303. The AJ simply ignored evidence in support of this argument, which was harmful and reversible error. Because the parties made submissions on the papers, none of the AJ's determinations rested on credibility determinations. Accordingly, Knox is entitled to *de novo* review of the Board's legal analysis, and its factual findings are

12

reviewed for substantial evidence. *Smith v. Gen. Servs. Admin.*, 930 F.3d 1359, 1364 (Fed. Cir. 2019) quoting *Campbell v. Merit Sys. Prot. Bd.*, 27 F.3d 1560, 1564 (Fed. Cir. 1994). *See also U.S. Bank Nat. Ass'n v. Village at Lakeridge, LLC*, 2018 WL 1143822, *5 (Mar. 5, 2018).

## ARGUMENT

### I.    Standard of Review

The Federal Circuit reviews the Board's decision pursuant to U.S.C. § 7703(b)(1)(A), and 5 U.S.C. §7703(c). The decision must be set aside whenever it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule or regulation having been followed; or (3) unsupported by substantial evidence." *McGuffin v. Soc. Sec. Admin.*, 942 F.3d 1099, 1107 (Fed. Cir. 2019) (quoting *Hayes v. Dep't of the Navy*, 727 F.2d 1535, 1537 (Fed. Cir. 1984)). The Federal Circuit reviews, "…the Board's legal conclusions de novo and its fact findings for substantial evidence." *Smith v. Gen. Servs. Admin.*, 930 F.3d 1359, 1364 (Fed. Cir. 2019) quoting *Campbell v. Merit Sys. Prot. Bd.*, 27 F.3d 1560, 1564 (Fed. Cir. 1994). This Circuit defines "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. Nat'l Labor Rels. Bd.*, 305 U.S. 197, 229 (1938).

## II.     USERRA Discrimination and Reemployment Standards

There are two kinds of claims arising under USERRA: reemployment cases, (under 38 U.S.C. §§ 4312-4328) and discrimination cases (under 38 U.S.C. 4311(a)-(b)). It is well established that USERRA forbids discrimination on the basis of qualifying military service. *McGuffin v. Social Security Administration*, 942 F.3d 1099, 1107 (Fed. Cir. 2019) (citing 38 U.S.C. § 4311; *Erickson v. U.S. Postal Service*, 571 F.3d 1364 (Fed. Cir. 2009); *Sheehan v. Department of the Navy*, 240 F.3d 1009 (Fed. Cir. 2001)). USERRA also obligates agencies to provide employees returning from qualifying military service with certain protections. As explained below, discrimination cases and reemployment cases involve different analysis, but stand for the same principle, that qualifying service should not disadvantage the employee.

### A.     USERRA Discrimination Cases

USERRA, codified in part at 38 U.S.C. §4311(a), prohibits covered employers from "[d]iscrimination against persons who serve in the uniformed services." That statute states,

> A person who is a member of, . . . performs, . . . or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, . . . performance of service, . . . or obligation. 38 U.S.C. §4311(a).

14

A violation of USERRA occurs when a person's uniformed service is a "motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such [uniformed service]." §4311(c)(1). The employee asserting the claim has the initial burden of proof that his membership in the uniformed services was a motivating factor in the employment action. *See McGuffin*, 942 F.3d at 1108 (quoting § 4311(c)(1)) (additional citation omitted). The employee can assert either direct or circumstantial evidence. *Sheehan* at 1014. Under USERRA, military service is a motivating factor for an adverse employment action if the employer "relied on, took into account, considered, or conditioned its decision" on the person's military-related absence or obligation (*Erickson v. U.S. Postal Serv.*, 571 F.3d 1364, 1368 (Fed. Cir. 2009); *Petty v. Metro. Gov't of Nashville-Davidson Cty*, 538 F.3d 431, 466 (6th Cir. 2008); *Coffman v. Chugach Support Servs.*, 411 F.3d 1231, 1238 (11th Cir. 2005)).

In discrimination cases, the Board must apply the factors listed in *Sheehan v. Dept. of Navy* 240 F.3d 1009 (Fed. Cir. 2001) which reflects a burden shifting framework. *See also, McMillan v. Dep't of Just.*, 812 F.3d 1364, 1372 (Fed. Cir. 2016). Under the four, non-exclusive *Sheehan* factors, "an employee making a USERRA claim of discrimination ... bear[s] the initial burden of showing by a preponderance of the evidence that the employee's military service was 'a substantial or motivating factor' in the adverse employment action." *Id*. at 1013.

15

Once the employee has made the requisite showing,[1] "the employer then has the opportunity to come forward with evidence to show, by a preponderance of the evidence, that the employer would have taken the adverse action anyway, for a valid reason." *Id*. Critically, however, "an employer can not treat employees on military duty like those on nonmilitary leave of absence." *Erickson v. U.S. Postal Serv*., 571 F.3d 1364, 1369 (Fed. Cir. 2009) (internal quotation marks omitted) (quoting *Allen v. U.S. Postal Serv.*, 142 F.3d 1444, 1447 (Fed. Cir. 1998)).

USERRA (38 U.S.C. §4311(b)) also prohibits a second form of discrimination or retaliation because a person

> (1) has taken an action to enforce a protection afforded any person under [38 U.S.C. Chapter 43], (2) has testified or otherwise made a statement in or in connection with any proceeding under [that] chapter, (3) has assisted or otherwise participated in an investigation under [that] chapter, or (4) has exercised a right provided for in [that] chapter.

To prevail on his discrimination claim, Knox was required to show by preponderant evidence that his absence for military service (from December 11, 2022, through November 23, 2003) was a substantial motivating factor in the agency's decisions

---

[1] In USERRA cases, the employee's initial burden is merely to show that military service was the motivating factor in the adverse employment action. USERRA is distinct from Title VII or other federal antidiscrimination laws, as the employee need not plead or prove that they are objectively qualified for the position to meet this initial burden. An employee's lack of qualifications is relevant, but is an affirmative defense that the employer can raise, not an additional hurdle for the plaintiff to prove. (*Carroll v. Delaware River Port Auth*., 843 F.3d 129, 132 (3d Cir. 2016).)

(1) to deny his WGI and (2) not promote him to a GS-13 position. Knox met his burden on the discrimination claims because his WGI delay caused him to also lose out on his promotion. Appx92, Appx712, Appx1261-1262, Appx1291, Appx1295. *Rassenfoss v. Dep't of Treasury*, 121 M.S.P.R. 512, 519 ¶ 13 (2014). *Rassenfoss* also interpreted DOL regulations on "reasonable certainty" to apply to both discretionary and non-discretionary benefits. *Id*.

## B.    USERRA Reemployment Cases

An agency may violate USERRA in failing to afford an employee certain benefit, rights, of conditions of employment following an absence from civilian employment to complete qualifying military service. Those obligations, as outlined in 38 U.S.C. 4312-4318, include placing the returning employee "in the position of employment in which the person would have been employed if the continuous employment of such person with the employer had not been interrupted by such service, or a position of like seniority, status and pay, the duties of which the person is qualified to perform[.] 38 U.S.C. 4313(a)(2)(A); *see also* 38 U.S.C. 4314(a). USERRA codified the "escalator principle" which is the concept that a returning employee who has been absent for qualifying military service is entitled to be restored to the same position that they would have attained but for the absence. *See* 38 U.S.C. §4313. Under USERRA, a returning service member is entitled to a promotion upon reemployment if there is a reasonable certainty that

the employee would have been promoted absent military service. *Coffy v. Republic Steel*, 447 U.S. 191, 197-98 (1980); *Goggin v. Lincoln St. Louis*, 702 F.2d 698, 701 (8th Cir. 1983).

### C.    Regulatory Provisions

Both the Department of Labor ("DoL") and the Office of Personnel Management ("OPM") have issued regulations implementing USERRA. For this case, the most relevant provisions pertain to increases in pay, and creditable service during qualifying military service. *See* 20 C.F.R. §1002.18, "An employer must not deny initial employment, reemployment, retention in employment, promotion, or any benefit of employment to an individual on the basis of his or her membership, application for membership, performance of service, application for service, or obligation for service in the uniformed services."[2] *See also* 5 C.F.R. §353.106(c). This regulation obligates agencies "to consider employees absent on military duty for any incident or advantage of employment that they may have been entitled to had they not been absent. This is determined by (1) Considering whether the 'incident or advantage' is one generally granted to all employees in that workplace and whether it was denied solely because of absence for military service; (2) Considering whether the person absent on military duty was treated the same as if the person had remained at work; and (3) Considering whether it was reasonably certain that the benefit would

---

[2] This regulation was not in effect during the 2003-2004 timeframe.

18

have accrued to the employee but for the absence for military service. 5 C.F.R. §

353.106(c)(1)-(3).

### III. The Administrative Judge's decision that the Agency's failure to afford Knox a within-grade-increase during his military service violated USERRA, but denial of his promotion did not, is not supported by substantial evidence.

Under *Sheehan*, Knox carried his burden to present sufficient evidence

that his WGI was improperly delayed, and his military service was a substantial

motivating factor in the delay. Indeed, the agency admitted, "under the escalator

principle of USERRA, SA Knox should have received his within-grade step

increase to GS-12 Step 3 without delay in February 2003." Appx10. The Board

determined this was true because of Knox's past history of step increases. *Id*. But

the underlying evidence showed specifically that there was confusion caused by

Knox's leave status due to his military service, and the delay in providing his WGI

was directly because of this confusion.[3] Appx1036. There is no dispute that, "If

Appellant had received the within-grade-increase to GS-12, Step 3 on February 23,

2003, he would have been eligible for promotion to GS-13 on February 22, 2004."

Appx172. Knox has a satisfactory performance rating and was not subject to

---

[3] Email correspondence between agency Human Resources official Susan Blair asked, "Also, he was due a WGI on 2-23-03, to the GS-12/03. His LES shows his at the Step 2. How does that work – he doesn't actually 'get' the WGI till [sic] he returns to duty?" To which Janice Jones responded, "…He will receive the within grade when he returns to duty…." Appx1036.

discipline. *Id*. Similarly, his first line supervisor, and second line supervisor the Assistant Special Agent in Charge, both approved his promotion. *Id*. His third line supervisor also signed off on the promotion between April 21, 2004, and June 3, 2004. *Id*. Thus, as of February 22, 2004, Knox's promotion to GS-13 was reasonably certain, and therefore a benefit of employment he was expected to receive. *See Rassenfoss*, 121 M.S.P.R. at 519.

But the WGI delay caused a series of events that prevented his GS-13 promotion from being awarded. Appx173. Because of the delay, his eligibility to file his promotion paperwork was delayed until April 2004. *Id*. Unfortunately for Knox, the DEA significantly changed its promotion policy on June 15, 2004. *Id*., *see also* Appx254-261. In February 2004, when Knox first should have been eligible for promotion from GS-12 (Step 3) to GS-13, such a promotion was nearly always granted if the employee was otherwise eligible. *Id*. The existing policy, which Knox acknowledged, stated in part, "All promotions are based on fulfilling the requirements below plus at least a fully successful performance rating and recommendation from my supervisor." Appx1107. The existing policy stated in part, "No promotion will be automatic, but if all the above criteria are met, the SAC's personal recommendation will normally be accepted after review by the Position Review Committee." Appx6, Appx1114. In June 2004, the DEA altered its policy regarding such a promotion, from almost automatic, to discretionary.

20

Appx7. Thus, the WGI delay, caused a cascading effect, in essence preventing

Knox from receiving a reasonably certain promotion to GS-13 position.

Appx1274-1328, Appx1329-1349.

Courts examining reasonable certainty in other USERRA cases involving

promotion claims have employed both a forward and backward-looking approach

in examining reasonable certainty. First, courts will examine whether it appears, as

a matter of foresight, that the employee who was otherwise eligible would have

obtained a certain position had the employment not been interrupted by military

service. Second, the court analyzes whether, in hindsight, a specific USERRA

covered employee was, or would have, completed the necessary pre-requisites for

the position. *See Tilton v. Mo. Pac. R.R. Co.,* 376 U.S. 169, 181 (1964) ("This

requirement is met if, as a matter of foresight, it was reasonably certain that

advancement would have occurred, and if, as a matter of hindsight, it did in fact

occur."). *See also Pomrening v. United Air Lines, Inc*., 448 F.2d 609, 613 (7th Cir.

1971) ("First, it must appear, as a matter of foresight, that pilot trainees who

successfully completed United's training course were regularly advanced to flight

officer status. Second, it must appear, as a matter of hindsight, that Pomrening

would have probably completed his training in the normal course had it not been

interrupted by his military service."). The AJ disregarded *Tilton* and *Pomrening*

because those cases involved automatic promotions or "entitlements" thereby

21

disregarding critical case law relevant to Knox's claims. This was an abuse of discretion.

Under the foresight and hindsight analysis, on or around February 2004, almost everyone who applied for promotion to a GS-13 position received the promotion. Appx596-601, Appx643-644, Appx689-690. Knox's evaluations were all positive, and it is reasonably certain that his chain of command's support for his promotion in April 2004, would have been the same in February 2004. *Id*., *see also* Appx 225, Appx1316-1318.  His chain of command's support also affirmed that Knox was capable of performing GS-13 work. *Id*. Knox is not required to prove "entitlement" to "automatic" promotion, he is only obligated to show his promotion would have been reasonably certain. Under *Tilton*, 376 U.S. at 181, "A returning veteran cannot claim a promotion that depends solely upon satisfactory completion of a prerequisite period of employment training unless he first works that period. But upon satisfactorily completing that period ..., he can insist upon a seniority date reflecting the delay caused by military service."; *See also Pomrening*, 448 F.2d at 616. Under these precedents, the AJ should have found in this case, that the agency's failure to promote Knox violated USERRA section 4311 because in denying his promotion to GS-13, it disregarded that the earlier eligibility date for his promotion was actually February 23, 2004. Had his

application been evaluated under the framework existing in February 2004, Knox has carried his burden, unrebutted, that his promotion was reasonably certain.

Despite being directly asked for its reasons for Knox's non-promotion, the Agency never responded to this discovery request and never provided any specific reasons. Appx1333. Relatedly, it never provided evidence concerning its reasons, only that such promotions were "not automatic." Regardless of this, under *Huhmann* and *Tilton*, Knox's promotion to GS-13 was reasonably certain in February 2004. Appx99-102. Under the analysis of *Tilton*, the effective date for Knox's promotion to GS-13 would remain February 23, 2004, the date it would have been had he not been absent for military service from November 22, 2002, to November 21, 2003. Appx99-100, Appx250. Regardless, the delay in processing his promotion was clearly due to his military service, which was a motivating factor under the relevant case law. Appx705-706, Appx712, Appx769. *See Hayden v. Dep't of Air Force*, 812 F.3d 1351, 1357 (Fed. Cir. 2016) ("As we have explained, "military service is a motivating factor for an adverse employment action if the employer 'relied on, took into account, considered, or conditioned its decision' on the employee's military-related absence or obligation. *Erickson v. U.S. Postal Serv.*, 571 F.3d 1364, 1368 (Fed. Cir. 2009) (quoting *Petty v. Metro. Gov't of Nashville–Davidson Cty.*, 538 F.3d 431, 446 (6th Cir. 2008)"). That is clearly the case here, as GS Cassity mistakenly thought Knox's military-related

23

absence rendered him ineligible for the correct WGI effective date of April 2003.

Similarly, GS Cassity was mistaken in thinking that Knox was eligible to submit

his promotion package starting in April 2004, rather than the earlier correct date of

February 23, 2004. Appx705-706, Appx712, Appx769, Appx1316. Had he been

allowed to submit earlier, in light of the promotion of his BAT colleague, and the

rates of promotion for other employees, Knox was reasonably certain to have

achieved his promotion. *Id*., *see also* Appx895.

The AJ ruled because it was not "automatic" or an "entitlement" the AJ

denied Knox's reemployment claim with regard to the agency's failure to promote

him. *See* Appx70, ("…all GS-13 promotions were discretionary and not an

entitlement.") But Knox did not need to show an "entitlement" to an automatic

promotion, he only needed to show his promotion was reasonably certain. Based

on the agency's own documents, Knox clearly showed his promotion was

reasonably certain, as of February 2004. Appx15. First, the policy then in place (in

February 2004, with 12 months in service at GS-12, step 3), was that eligible

agents who had the required approvals would almost always be promoted.

Appx596-601, Appx643-644, Appx689-690. Indeed, review of the agency's own

evidence that Journeyman Submissions for such promotions for the preceding

years, were granted nearly universally. *Id*. The promotion rates were high and

trending upwards (specifically, for Journeyman 1811 series agents with three years

24

at the GS-12 level, applicants were granted promotion to GS-13 at the following

rates: for FY 2001 (97%), FY 2002 (98%), and 2003 (99%). *Id*. Thus, Knox's

argument that he was reasonably certain to have been promoted to a GS-13 under

the policies in place in February 2004, is compelling. Knox met his burden to show

by a preponderance of evidence that he was reasonably certain to have been

promoted.

In support of denial of Knox's discrimination claim related to his promotion,

the Initial Decision relies on *Becwar v. Department of Labor* 115 M.S.P.R. 689

(2011). In *Becwar* the Board considered a USERRA discrimination claim for

failure to promote. *Id*. The Board ultimately determined the agency had carried its

burden to show the employee's lack of work at the required grade level supported

the agency's decision not to promote the employee. *Id*. at ¶13. But *Becwar*, is

distinguishable from this case because unlike the employee in *Becwar*, Knox can

show he met the requirements for promotion, and the agency offered no evidence

concerning the reasons he was not promoted. Thus, the Initial Decision's reliance

on *Becwar* is misplaced. There were other significant defects in the Initial

Decision's legal analysis, discussed in more detail below.

**IV.     The AJ's denial of Knox's discrimination claims was not supported by substantial evidence.**

The AJ erred in discussing evidence related to the reason that the WGI was delayed, simply ignoring critical information. Specifically, the Initial Decision stated:

> While the appellant showed that he was denied a benefit of employment, he did not show by preponderance evidence that his membership in the uniformed services was a substantial or motivating factor in the delay of his WGI. There was no reason articulated by anyone about why the WGI was delayed. Nor is there any apparent link between the appellant's uniformed service and the delay he experienced. Appx69.

But this is completely false.

The Agency's own documents demonstrate that the WGI was delayed because of confusion by agency employees about how to address Knox's creditable service while he was deployed. Appx703, Appx1036. They thought, mistakenly, that the WGI would not go into effect until Knox returned from his active duty service. *Id*. The email correspondence between DEA Human Resources officials clearly indicated the delay in processing Knox's WGI was because he was out on leave without pay for military service (LWOP-US) while he became eligible for the WGI. *See* Appx1036; *see also* n.2, *supra*. There was confusion about how the WGI was to be awarded in light of Knox's LWOP-US status. *Id*. Thus, the delay in the WGI, was because of his military service, and this delay also impacted his promotion application. Appx596-601, Appx643-644, Appx689-690.

26

Once Knox satisfied his burden showing the WGI was delayed because of his military service, the burden should have shifted to the agency to show it would have denied the WGI without regard to Knox's service. *Sheehan*, 240 F.3d at 1013. But it never made that showing, and never presented evidence consistent with that conclusion. Appx1237, Appx1240-1241. It even admitted that the WGI should have been processed "…without delay in February 2003." Appx10. Knox's evidence that his military service was a motivating or substantial factor in the DEA's decision not to afford him a WGI as required, was both "detailed and well supported by the record." *Beck v. Dep't of Navy*, 997 F.3d 1171, 1189 (Fed. Cir. 2021). Accordingly, his discrimination claim should have been granted.

As Knox made clear in his submission, "the only reason for the adjustment in the effective date for Appellant's Step 3 WGI from February 23, 2003 to April 18, 2003 was the Agency's error in treating time on LWOP-US as non-creditable time for the purpose of the WGI. Appx1289. As such, Appellant has carried his burden to show that his absence for uniformed service was a "'substantial or motivating factor in the adverse employment action. *Erickson*, 571 F.3d at 1368.'" Appx1289. The Initial Decision simply ignores this evidence, and argument. Appx1-28. This was an abuse of discretion, and also means the statement that there was no evidence on the reasons for the WGI delay is not supported by substantial evidence.

The WGI delay was not just a reemployment claim, as explained above, it was also an adverse action reflecting discrimination under USERRA. Thus, in choosing to deny the promotion claim (on either a discrimination or a reemployment theory) the AJ ignored the relevant case law concerning reasonable certainty and applied an incorrect legal burden to Knox. Knox does not dispute there was a discretionary element to the promotion to a GS-13 position. But he made a clear showing, supported by preponderance of the evidence, that he was prevented from applying in February 2004, and that it was reasonably certain he would have been promoted absent the delay in awarding his WGI (which unduly delayed his eligibility for applying for promotion). Appx1292-1293. The Agency offered no specific evidence to refute this.

Indeed, Knox demonstrated that he had the full support of his GS, ASAC, and SAC, all of whom he worked with for several years. Appx1316. The support of these senior officials in April 2004, was likely to have been the same in February 2004, and they all agreed Knox was capable of performing GS-13 work. Without providing any evidence in response to the evidence Knox presented, the agency failed to meet its own evidentiary burden, that it would not have promoted Knox independent of his military service. The Agency offered no evidence that Knox was not capable of GS-13 level performance (as in *Becwar*) nor did it present any evidence on the reasons for non-promotion at all. Furthermore, the promotion

rates, and identification of at least one comparator were never rebutted by the

agency. Thus, based on the evidence he provided, Knox's promotion was

reasonably certain, and he was not required, as the Initial Decision suggests, to

show an "entitlement" to his promotion to prevail on his failure to promote claim.

Taken together, the "escalator principle" and the reasonable certainty

standards are intended to require reemployment of returning employees under

conditions that do not disadvantage them. These are placed in a regulatory

framework which states, "The escalator principle requires that the employee be

reemployed in a position that reflects with reasonable certainty the pay, benefits,

seniority, and other job perquisites, that he or she would have attained if not for the

period of service." 20 C.F.R. § 1002.191. Thus, "The 'reasonable certainty test'

aids in determining the returning service member's position on the 'escalator,'

inquiring into the position a returning service member would have been

'reasonably certain' to have attained absent the military service." *Huhmann v. Fed.*

*Express Corp.,* 874 F.3d 1102, 1106 (9th Cir. 2017) (quoting 20 C.F.R. §

1002.191). Applying these principles together should, "…guarantee that progress

in the returning service member's overall career trajectory has not been set back by

his service." *Id.* The fact is that Knox was absent during his WGI deadline because

of his military service, and USERRA protects against adverse actions resulting

from such absences. *See Erickson*, 571 F.3d at 1369; *See also Hayden v. Dep't of*

*Air Force* at 1360. Had the AJ applied the correct principles here, concerning the escalator principle and the reasonable certainty test, Knox would have prevailed.

## V.    The AJ's Discovery Rulings were Arbitrary, Capricious and an Abuse of Discretion.

The central issues in the Appellant's USERRA claim were whether he had been improperly denied his WGI increase due to his deployment and whether the failure to promote him to a GS-13 in 2004 was a byproduct of that denial or evidence of USERRA discrimination. Appx92-94. Obviously, the central issue for Appellant and the evidence of any affirmative defense from the Agency would involve discovery.

### A.    Board Procedures Establish the basis for Orderly Discovery and Fair Motions Practice.

MSPB procedures authorize discovery. 5 C.F.R. § 1201.71-75: "Discovery is designed to enable a party to obtain relevant information needed to prepare the party's case…. Parties are expected to start and complete discovery with a minimum of Board intervention" 5 C.F.R. § 1201.71.

Section 5 C.F.R. § 1201.72. identifies the purpose of discovery before the Board:

> (a)    *Explanation.* Discovery is the process, apart from the hearing, by which a party may obtain relevant information, including the identification of potential witnesses, from another person or a party, that the other person or party has not otherwise provided. Relevant information includes information that appears reasonably calculated to lead to the discovery of admissible evidence. This information is obtained to assist the parties in preparing and presenting their cases. The Federal Rules of Civil Procedure may be used as a general guide

30

for discovery practices in proceedings before the Board. Those rules, however, are instructive rather than controlling.

Under the same section 1201.72, the Board authorizes the following types of discovery:

> (c) ***Methods.*** Parties may use one or more of the methods provided under the Federal Rules of Civil Procedure. These methods include written interrogatories to parties, depositions, requests for production of documents or things for inspection or copying, and requests for admission.

With respect to discovery a party should specify the time and place for any responses and should note depositions similarly. 5 C.F.R. § 1201.73. However, the regulations also state that depositions may be taken by any method agreed upon by the parties. 5 C.F.R. §1201.75. To further cement the opportunity for parties to set depositions without court intervention, the Board regulations note: "Deposition witnesses must give their testimony at the time and place stated in the request for deposition or in the subpoena, unless the parties agree on another time or place." 5 C.F.R. § 1201.73(d).

> Although a judge may limit the frequency or extent of discovery, the judge must make a finding that:
>
> (1) The discovery sought is cumulative or duplicative or is obtainable from some other source that is more convenient, less burdensome, or less expensive.
>
> (2) The party seeking discovery has had sufficient opportunity by discovery in the action to obtain the information sought; or

(3) The burden or expense of the proposed discovery outweighs its likely benefit.

The Board also identifies the procedure and purpose for filing a motion to compel when party purportedly fails to respond to discovery at 5 C.F.R. §1201.73:

(c) *Motions to compel or issue a subpoena.*

(1) If a party fails or refuses to respond in full to a discovery request, the requesting party may file a motion to compel discovery. If a nonparty fails or refuses to respond in full to a discovery request, the requesting party may file a motion for the issuance of a subpoena directed to the individual or entity from which the discovery is sought under the procedures described in 1201.81 of this part. The requesting party must serve a copy of the motion to the other party or nonparty. Before filing any motion to compel or issue a subpoena, the moving party shall discuss the anticipated motion with the opposing party or nonparty, and all those involved shall make a good faith effort to resolve the discovery dispute and narrow the areas of disagreement. The motion shall include:

(i) A copy of the original request and a statement showing that the information sought is discoverable under section 1201.72;

(ii) A copy of the response to the request (including the objections to discovery) or, where appropriate, *a statement that no response has been received*, along with an affidavit or sworn statement under 28 U.S.C. 1746 supporting the statement (See appendix IV to part 1201); and

(iii) A statement that the moving party has discussed *or attempted to discuss* the anticipated motion with the nonmoving party or nonparty and made a good faith effort to resolve the discovery dispute and narrow the areas of disagreement. (Emphasis supplied).

The timing of a motion to compel is also set forth by the Board at 5 C.F.R.

§1201.73:

(d) *Time limits.*

… (3) Any motion for an order to compel or issue a subpoena must be filed with the judge *within 10 days of the date of service of objections or, if no response is received, within 10 days after the time limit for response has expired. Any pleading in opposition to a motion to compel or subpoena discovery must be filed with the judge within 10 days of the date of service of the motion.* (Emphasis supplied)

## B.    Improperly Denying or Restricting Discovery is an Abuse of Discretion.

An AJ is expected to follow Board procedure and practice and to allow the parties to fully develop their claims and defenses. While a judge may alter the scope, numerosity and timing of discovery, that power is not unfettered. The Board has held that an administrative judge who improperly restricts discovery, engages in an abuse of discretion. *Jenkins v. EPA*, 118 M.S.P.R. 261 (2012) (denial of depositions in whistleblower retaliation case by AJ severely limited appellant's discovery and presentation of witnesses and prohibited appellant from fully presenting evidence in support of her allegations): *Mangano v. Department of Veterans Affairs*, 104 M.S.P.R. 316 (2006) (improper restriction of discovery held abuse of discretion); *Kiser v. Department of Education* 66 M.S.P.R. 372 (1995) (denial of information sought by motion to compel without supporting explanation abuse of discretion); *White v. Government Printing Office,* 108 M.S.P.R. 355 (2008) (AJ setting more restrictive deadline than authorized by Board regulations

for motion to compel, precluded ability of appellant to present evidence of

discrimination was reversible error, timing of motions is set by Board).

> The Federal Circuit in reviewing such issues has noted:

> The Board, …has not hesitated to insist on proper compliance with
> legitimate discovery requests, and it often finds abuse of discretion by
> administrative judges who fail to enforce compliance with the Board's
> regulations concerning discovery requests. [citations omitted]. *Baird v.
> Department of Army*, 517 F.3d 145, 1350 (Fed. Cir. 2008) (Denial of
> motion to compel emails that discussed evidence and persons involved
> in Appellant's removal decision by AJ was abuse of discretion).

The Federal Circuit has held that an abuse of discretion requiring reversal occurs

when an Appellant can show that the denial of evidence resultant from a ruling

"caused substantial harm or prejudice to his rights which could have affected the

outcome of the case." *Whitmore v. Dep't of Labor*, 680 F.3d 1353, 1368 (Fed. Cir.

2012) (quoting *Curtin v. Office of Pers. Mgmt.,* 846 F.2d 1373, 1378 (Fed. Cir.

1988)). [4]

---

[4] In *Whitmore*, the Federal Circuit found that it was an abuse of discretion for a
MSPB administrative judge to exclude witnesses for lack of relevance, when those
witnesses could have provided testimony relevant to two factors for which the
petitioner had the burden of proof. *Whitmore*, 680 F.3d at 1369. In doing so, the
*Whitmore* Court found that "the AJ excluded numerous witnesses from the hearing
that caused substantial harm and prejudice to Whitmore's right and ability to
present a complete whistleblower defense under *Carr[,]*" the relevant standard.
*Whitmore*, 680 F.3d at 1368. The AJ's decision thus could have had a "substantial
effect on the outcome of the case, and so constitutes harmful error." *Whitmore*, 680
F.3d at 1370.

### C.    Appellant's Prodigious Attempts at Discovery.

The central issue in the issue of Appellant's promotion to GS-13 was whether his promotion to GS-13 denial was a byproduct of some form of discrimination based on his military status. Appx1290-1295. At the heart of a USERRA claim itself, the Appellant noted that his promotion in 2004 was delayed because his within grade increase was delayed. *Id.*, *see also* Appx1290-1295. He noted that the failure to provide him with a within in grade, delayed his ultimate promotion package for months and but for that delay he would have been promoted. *Id.* Appellant notes that while promotions were technically discretionary, his promotion to GS-13 was "reasonably certain" as of February 2004, since he had met all his time in grade requirements, had outstanding performance ratings and no disciplinary history, and was approved for promotion by his supervisory chain. Appx1305-1306, Appx1290-1295, Appx1301-1302. Having met the pre-requisites that supported a promotion, it was an abuse of that discretion not to promote him. *Id.* That failure was based on Appellant's military status, as it was his deployment and LWOP-US status that resulted from deployment, that caused his supervisors to hesitate in forwarding his package in a timely fashion. *Id.*

In the AJ's decision, he excuses the Agency non-compliance as based on a "random administrative error" and notes that "no reason was articulated by

anyone" as to why the WGI was delayed. Appx11-12. Thus, the AJ seemed to find the Agency, without the slightest supporting evidence, had no improper motive in delaying the WGI, and as such it had no anti-military bias in denying Appellant a promotion. He concluded that the promotion was not a reemployment issue because it was not "automatic" and thus not a cognizable USERRA right.[5] Appx12-16. He also concluded that Appellant had failed to show that the decision to not promote him flowed from a discriminatory motive. Appx13. What the AJ did not discuss was that his uneven hand on the discovery lever, had foreclosed the Appellant from securing information related to the central issue as to why the Agency failed to timely process Appellant's promotion package and whether similarly situated agents who had applied for GS-13 promotions between February and May 2004 had been promoted, which would have been relevant to evaluate any claim that the Appellant was not singled out due to his military service.

---

[5] As noted infra. 38 U.S.C. § 4311(a) provides in relevant part:

> A person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, *promotion, or any benefit of employment* by an employer on the basis of that membership, application for membership, performance of service, or obligation. (Emphasis supplied).

On January 3, 2020, Appellant filed his appeal. Appx88-135. On January 6, 2020, AJ Kang issued an Acknowledgement Order and a Jurisdictional Order, although USERRA jurisdiction was self-evident from the appeal itself.[6] Appx136-151, Appx152-160. The Agency sought dismissal on January 27, 2020. Appx192-198.

On February 5, 2020, the AJ found jurisdiction "without exception". Appx317-319. On the same day the AJ, *sua sponte* somewhat cryptically within the order, AJ Kang ruled:

> Motions to compel pursuant to 5 C.F.R. § 1201.73 shall be received in this office and the opposing attorney within five calendar days after the time limit for response has expired or within five days of the date of service of objections, whichever is the earlier event, rather than 10 days as specified in 5 C.F.R. § 1201.73, and must comply with the Board's rules and regulations, and must be accompanied by evidence showing that the party attorneys made efforts to confer about the dispute either via telephone conversation and/or in-person to narrow the areas of disagreement. Any response or opposition to such a motion must be filed within five calendar days rather than 10 days as specified in 5 C.F.R. § 1201.73. Appx318.

The AJ gave no explanation why he more than halved the time for any motions practice related to discovery from ten days to "five calendar days[.]" *Id.* He also, without explanation, more than halved the time to respond to such motions from ten days to "five calendar days[.]" *Id. See* 5 C.F.R. §1201.73(d)(3). Nor did the

---

[6] The appellant was thus forced to file discovery, at the same time there was a jurisdictional order pending on whether the appeal was even proper. *See* Appx136-151.

judge explain why the meet and confer requirement, was shifted to an in person or telephonic discussion, or how a party could be expected to review objections, determine their merit, meet in person or by telephone and file a motion to compel, in writing, within five calendar days.[7] Appx318.

This was in and of itself a procedural error. While the Board grants the AJ the right to tailor discovery responses and limit them where the judge provides a justification for such a limitation, there is no authority to restrict motions practice or to shorten the time for motions to compel and for responses. A party "must" file motions within ten days of a party's failure to respond to a demand for compliance and the opposing party "must" file a reply within ten days thereafter, but there is no procedure or authority to render effective motions practice an impossibility by arbitrarily and capriciously reducing the time. *Id.*, *see also Kiser*, *supra*. Additionally, Judge Kang ordered the parties to conduct "any notice remaining depositions with 23 calendar days and to conduct those depositions within 58 days of this Order. Appx318. These times limits were inherently impractical as the Agency itself would note. Appx464.

The Initial Acknowledgment Order of January 6, 2020, gave the parties 30 days to issue discovery and the responding party had 20 days to reply. Appx137-

---

[7] Notably the AJ did not authorize the parties to contact him by telephone to call the judge to quickly discuss and resolve the dispute, a practice finding increasing use in the federal system.

138. Appellant served interrogatories, production demands, requests for admission, and notice of depositions for the equivalent of Agency Fed. R. Civ. P. 30(b)(6) corporate witnesses on February 5, 2020. Appx335-358. These discovery requests were targeted and specific to the issues of the appeal, focusing on whether the Agency was aware of Appellant's military status and exploring the connection between that status and his absence from the Agency for military service with the delay in a within grade increase and a delay in his promotional package, that because of a change in Agency policy, precluded him from promoting to a GS-13 in 2004. Appx344-350. As the Appellant was uncertain of who made any decisions on these issues or what policies were relied upon, he submitted corporate depositions for unspecified persons who would have knowledge of Agency in-grade increases and promotional practices in 2004, or who could speak to why Appellant suffered a delay in or denial of such matters. Appx356. *See* Fed. R. Civ. P. 30(b)(6).

On February 25, 2020, the Agency responded with five full pages of "general objections", a preliminary statement and reservation of rights, and responses that objected to each and every interrogatory and production request posed. Appx360-408. Some interrogatories made references to documents but in a generic way. Appx374. The Agency refused to address any affirmative defenses it might have, contending such responses were "premature", although it had already

asserted a laches claim in its Narrative Response to the Initial Appeal. Appx373, Appx195-196. It also failed to address why Knox was not promoted, although it admitted that he was eligible for promotion on February 23, 2004. Appx376-377.

After reviewing the discovery responses, many of which made unclear what was being responded to and what was being objected to, Appellant's counsel on February 28, 2020, at substantial time and expense, wrote to the Agency its written position on the objections and responses and their insufficiency and requested a telephonic meet and confer or other response. Appx410-415, Appx335. The Agency again did not respond. Appx335.

On March 2, 2020, Appellant filed a motion to compel, this was the fifth calendar day from the date of the objections. Appx320-416. Appellant noted that he had attempted to set up a telephone call with Agency counsel, but no response was made to the request. Appx323. Counsel also painstakingly pointed out how the Agency had advanced spurious general objections, improper specific objections, and misused references to documents rather than providing cogent answers to various interrogatories. Appx324-333. Counsel also painstakingly pointed out how the evidence sought was critical to the Appellant's case in chief and to the Agency's defenses and affirmative defenses. *Id.* Counsel objected to how the Agency objected to and attempted to dodge contention interrogatories and refused to identify or explain its grounds for its affirmative defenses. *Id.* In short, the

Appellant pointed out how the Agency had refused to meaningfully answer

discovery, clarify what it was actually objecting to or why, or provide facts,

persons, or communications necessary to support its defenses or allow Appellant to

"discover" evidence related to his own claims, all of which was in the Agency's

custody and control. *Id.*

On March 10, 2020, AJ Kang denied the motion, citing the lack of proof of a

telephonic or in person attempt to discuss the deficiencies with opposing counsel.

Appx422-425. Believing this ruling to be contrary to fact and law, Appellant

sought to renew the motion on March 12, 2020. Appx433-444. Appellant

specifically noted that Agency counsel Gregg Hand had called Appellant counsel

to apologize for not responding to the discovery issues, as Hand had been outside

the country during these attempts. Appx438. Hand did not convey that he would

oppose the motion to compel.

Although the Agency never responded to or opposed the motion, the AJ did

not hold any sort of telephonic hearing. Instead, AJ Kang, reflexively denied the

motion, again on March 12, 2020, contending that Appellant had not attempted to

contact the Agency by telephone or in person. Appx445-449.

Despite the AJ's contorted ruling, the parties pressed forward with efforts on

discovery. On March 11, 2020, the World Health Organization declared COVID-

19 a pandemic. Within a week, an Executive Order of the President, Proclamation

9994, and various Orders from the Mayor of the District of Columbia and the

Governors of Virginia and Maryland instituted emergency measures. Appx462-

463. The Nation was in lockdown and remote work, stay at home orders, and

societal disruption of work and life schedules began as the millions of cases of

COVID-19, including one affecting this very advocate, brought the country to a

standstill.

### D.    COVID-19 Was Not Seen as Good Cause for Either Delaying the Proceedings nor Extending Discovery. This was error.

On March 13, 2020, the parties *jointly* moved to stay the proceedings for 30

days to voluntarily conduct discovery and seek possible settlement. Appx450-455.

That same day AJ Kang stated these reasons did not provide "good cause" for a

stay. Appx456-458. The judge made this finding although a suspension of the case

does not require "good cause." *See* 5 C.F.R. § 1201.28 concerning case

suspensions which states that: "(a) *Suspension period.* The judge may issue an

order suspending the processing of an appeal for up to 30 days. The judge may

grant a second order suspending the processing of an appeal for up to an additional

30 days[.]"

On March 18, 2020, the parties *again* jointly sought a suspension based on

the COVID-19 Pandemic. Appx459-466. That same day Judge Kang denied the

motion on the grounds that there was no proof that either party had properly

noticed depositions within the period proscribed by the judge. Appx467-470. The

AJ made this assertion, even though neither party objected to the manner in which Appellant had noticed depositions nor did he consider the fact the Agency had not noticed any depositions at all. *Id*. Discovery, a process that is supposed to be generally self-executing, and which the law and courts expect will be resolved without increasing acrimony and expense to the parties and the court, was being denied because Judge Kang seemed intent on imposing procedures that appeared designed to increase expense, limit resolution, and preclude discovery.

Once again, the parties attempted to ensure the discovery occurred with sufficient time for both parties. On March 19, they jointly sought to renew the suspension request, noting that Appellant had complied with the substance of Board regulations, that the Agency itself acknowledged it could not comply with discovery under the current timetable or even locate witnesses or documents for a hearing date set in April 2020 and that the Pandemic was raging. Appx474-491. *In the joint motion*, *both parties became more direct* noting Board regulations authorized the parties to modify deposition protocols and perhaps more importantly, they noted:

> The Board does grant an AJ the power to grant stays and continuances where they are for good cause and serve the fairness of the process and the interests of justice. Appellant is concerned that strict adherence to rather constricted discovery deadlines may defeat those interests and notes that where both parties are seeking continuances, logic suggests there are sound reasons to grant such requests. *Practically speaking, the pandemic is a good cause, and any denial of an extension would be an abuse of discretion.* (Emphasis supplied) Appx481.

Judge Kang again denied the motion, now seizing on the failure to set a specific time and date for the deposition of corporate witnesses (that the Agency had yet to identify at that point) as a basis for not granting relief. Appx492-495. Three days later, the parties sought mediation. Appx496-504. The parties then engaged in protracted mediation attempts for many months. Unfortunately, no resolution could be made.

### E.    The Abuse of Discretion during the Conference Call on May 17, 2022.

On April 1, 2022, the appeal was returned to Judge Kang. Appx569-571. On May 17, 2022, AJ Kang held a prehearing conference call. Appx669-671. Appx1222-1230. At this point the Appellant had been denied all practical discovery methods and witness depositions and had decided to submit his case to a written briefing. Appx663-668. The conference call was merely to discuss the briefing dates. Appx669.

The conference confirmed Appellant's concerns. Appx1231-1253. Judge Kang used the conference to advise the Agency on its need to discuss its laches claim. Appx1236. He noted the Appellant had not responded to the Agency motion on the issue. *Id.* The Appellant responded that the Agency never filed a laches motion and had never supported it in any discovery response. Appx1236-1242. The Agency merely mentioned it in its Agency Narrative, the functional equivalent to

the Answer to a Complaint. Appx192, Appx195-196, Appx1238. The Appellant

asserted the defense was never asserted and certainly had been abandoned.

Appx1238-1242.

The AJ then queried Appellant's counsel on whether a document referred to

by the Appellant in his initial appeal, that acknowledged receipt of his request for a

step increase on February 27, 2020, existed. Appx1235. Judge Kang noted that

"Mr. Byrnes cited that in the appeal, and I made my jurisdictional determination

based on its existence." Appx1235-1236. He wanted to know, prior to any hearing

submissions, whether that claim was accurate. *Id.*

Counsel stated that he was not prepared to discuss the merits of the case or

the evidence at a status conference designed to set briefing dates. *Id.* Judge Kang

then asked Mr. Knox whether he had discussed the document and its existence

prior to Mr. Byrnes including it in the appeal, as the document was central to his

ruling. *Id.* Counsel objected on the basis of privilege and Judge Kang stated that

this "was not an evidentiary hearing" and he "was just talking here." *Id.*, *see also*

Appx1231-1253.

Knox responded that he had drafted the initial appeal while retaining counsel

and that he had cited the document which he had a copy of. Appx1231-1253,

Appx1255. For reasons unknown, the AJ then asked Knox to identify his current

employer. Appx1235-1236.

On May 23, 2022, Appellant timely filed his objections and recollection of the status conference, he memorialized the above contentions. Appx1231-1253.

On May 25, 2022, the AJ issued an "Order addressing Objections and Exceptions" (Appx1254-1257). Although he cited no authority for this "Order" the AJ *admitted* the substance of Appellant's statements. Appx1231-1253, Appx1254-1255. Rather than discuss them the AJ assumed that the Appellant was raising a claim of bias. Appx1255. But oddly the AJ did not address the claim, nor distance himself from any such charge. Appx1254-1257. Instead, AJ Kang appeared to presumptively defend himself from a charge that had not been made stating:

> In making a claim of bias or prejudice against an administrative judge, a party must overcome the presumption of honesty and integrity that accompanies administrative adjudicators. *Oliver v. Department of Transportation*, 1 M.S.P.R. 382, 386 (1980). An administrative judge's conduct during the course of a Board proceeding warrants a new adjudication only if his comments or actions are evidence a deep-seated favoritism or antagonism that would make fair judgment impossible. Appx1255.[8]

The Order also made the odd statement absent any elaboration that, "A conference call is not a hearing." Appx1255.

---

[8] We should note that the AJ continued to burden parties even after his decision. As the Agency conceded the WGI issue, the AJ found Appellant to be the prevailing party on that issue. He ordered extensive briefing on the issue of attorney's fees and costs. Appellant went to great effort to establish such fees. After the briefing, the AJ declined to issued a substantive decision on the fees pending this appeal, which was filed prior to briefing on the fees issue. To the Appellant, it appears the AJ rulings are unduly burdening him financially and he is concerned that the AJ is demonstrating bias, that the AJ himself interjected *sua sponte* into the record.

46

**F.    The Actions of AJ Kang cumulatively amount to an Abuse of Discretion.**

The Federal Circuit is legitimately concerned about wading into discovery disputes and finding reversible error based on a parties claim that an AJ erred in their rulings. The Federal Circuit has noted that:

> Procedural matters relative to discovery and evidentiary issues fall within the sound discretion of the board and its officials. This court will not overturn the board on such matters unless an abuse of discretion is clear and is harmful. If an abuse of discretion did occur with respect to the discovery and evidentiary rulings, in order for petitioner to prevail on these issues he must prove that the error caused substantial harm or prejudice to his rights which could have affected the outcome of the case. *Curtin v. OPM*, 846 F.2d 1373, 1378-70 (Fed. Cir. 1988) (citations omitted).

*See also Becker v. Department of Veterans Affairs*, 474 Fed. Appx 761, 763 (Fed. Cir. 2012); *See, Kirkendall v. Department of Army*, 573 F. 3d. 1318 (Fed. Cir. 2009).

But, as noted above in *Whitmore*, *supra*, discovery violations that preclude an appellant from perfecting their appeal abuse discretion and must be reversed. Further, where discovery denials are coupled with issues that suggest an AJ is becoming an auxiliary for the Agency or placing a thumb on the scale to prejudice an appellant, corrective action is appropriate. *See Beck v. Department of Navy*, 997 F.3d 1171 (Fed. Cir. 2021) (reviewing case procedural history and discovery rulings and finding that delay, and erroneous discovery rulings can factor into a remedy analysis). It can be an abuse of discretion to exclude relevant evidence on

an issue for which a party bears the burden of proof, and reversal is appropriate in such cases. *Sharpe v. Dep't of Just.*, 916 F.3d 1376, 1379–80 (Fed. Cir. 2019), citing *Whitmore at* 1368-69.

In the instant case, the AJ's lopsided and almost inexplicable discovery rulings caused Appellant substantial harm. Appx422-425, Appx433-444, Appx445, Appx572-578, Appx579-602, Appx693-624. The negative impact of the cumulative effect of the AJ's rulings was borne by the Appellant. Together, the denial of the motion to compel discovery, the refusal to allow depositions, the rejection of joint requests for legitimate continuances, and the reliance on a purported lack of evidence of motive and evidence of retaliatory intent, cumulatively meant that the AJ decided this case on an incomplete factual record. Appx433-444, Appx579-602, Appx625-652, Appx653-656. And although the Appellant believes that this appeal can be decided without reference to intent, the fact the AJ fashioned his decision based on that issue is enough to warrant the Federal Circuit noting the abuse of discretion that occurred.

At every stage of the proceedings, the Appellant fully and competently attempted to secure discovery. Appx320-416, Appx423, 433-444, Appx445-449, Appx579-602, Appx625-652. He filed timely interrogatories, production requests and requests for admissions, served timely deposition notices on corporate representatives the agency needed to designate, he filed timely motions to compel,

and he met and conferred with opposing counsel in a meaningful way to narrow disputes. *Id.*, *see also* Appx301-309, Appx310-316, Appx320-416, Appx417-421, Appx433-444, Appx445-449, Appx579-602, Appx625-652.

Appellant regularly sought suspensions of the proceedings to conduct and complete discovery, all of which were joined by the Agency. Appx474-495, Appx496-504, Appx510-521, Appx572-578. He cited compelling reasons for such requests, including the impact of the most severe pandemic in a century. He was respectful in its requests and reasonable in its actions. He cited delays that were not related to its own actions, he followed the actual procedures of the Board, and tried to accommodate the arbitrary and capricious rulings of an AJ whose inflexible and lopsided rulings express a lack of basic fairness. Under such circumstances these rulings constitute arbitrary and capricious conduct and amount to an abuse of discretion.

Finally, while the Appellant did not raise bias, the AJ's insertion of the claim into the record *sua sponte*, certainly raises the possibility that the AJ was annoyed with Appellant repeatedly asserting his concerns and objections. Should the Circuit remand this case, the Appellant should not face an administrative judge whose rulings undermined the whole purpose of discovery. For reasons known only to Judge Kang, he replaced established Board procedures with inflexible and unworkable rules, without explaining why such deviations were appropriate. The

power of an administrative judge to administer proceedings before him must be fair and reasoned and a marked departure from written procedures should bear explanation and where necessary discussion and correction by a reviewing court. Procedural processes that form the basis of substantive rights should not be subject to judicial whim.

## VI.    The Administrative Judge erred when he ruled a defense of laches would apply as the agency abandoned the defense, thereby waiving it.

During the appeal and in its closing brief, the Agency never once named any witness or pointed to any document that it needed to mount a defense that was unavailable due to Knox's delay in filing. Appx1332-1333. The AJ provided a speculative basis for laches that the Agency never raised and that is nonsensical on the facts.[9] The affirmative defense of laches has no bearing on this case because the Agency only ever raised it as a defense in its Agency Narrative, never produced evidence in support of it, and provided no argument in its closing brief on laches. Appx1240. This kind of defense was not supported by any discovery responses,

---

[9] The footnote in the Initial Decision which addresses alternative grounds for reliance on the defense of laches, notably does not contain any citations to any record evidence, nor does it address the parties' actual briefing in any specific manner. Appx16. In this way, the AJ's finding that that laches barred Knox's claim was not supported by substantial evidence. This lack of proof of prejudice is glaring, and shows that the agency failed to present any evidence or even argument in its closing briefs on this issue. Appx1258-1273. The failure to raise an affirmative defense should mean that defense is waived. In this case, the AJ resurrected the defense without justification, and abused his discretion in doing so.

nor record evidence of any kind. Indeed, the AJ, not the Agency, repeatedly broached the defense of laches, long after the Agency seemingly abandoned the defense. By improperly raising laches as a defense for a party, the AJ abused his discretion. But even if laches was available, the agency did not present any actual evidence that it would be prejudiced from mounting a defense. Appx1332. Because the agency did not identify a document, or a witness whose testimony was lost or unavailable, it failed to carry its burden to show undue delay and prejudice, both requirements to sustain a defense of laches. *Id*. Indeed, the personnel manual and promotional information for the relevant period were located and produced.

## CONCLUSION

Knox requests oral argument. For all of the foregoing reasons, the Court should reverse the MSPB's decision below and enter judgment for Anthony Knox.

August 29, 2023

Respectfully Submitted,

/s/Kevin E. Byrnes
Kevin E. Byrnes, Esq.
Grace H. Williams, Esq.
Fluet
1751 Pinnacle Drive, Suite 1000
Tysons, VA 22102
Telephone: (703) 590-1234
Fax: (703) 590-0366
Kbyrnes@fluet.law
Gwilliams@fluet.law

*Counsel for Petitioner*

# ADDENDUM

**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**WESTERN REGIONAL OFFICE**

ANTHONY W. KNOX,
               Appellant,

    v.

DEPARTMENT OF JUSTICE,
          Agency.

DOCKET NUMBER
SF-4324-20-0191-I-3

DATE: September 21, 2022

     <u>Kevin Byrnes</u>, Esquire, Tysons, Virginia, for the appellant.

     <u>Rachel Leahey</u>, Esquire, McLean, Virginia, for the appellant.

     <u>Gregg A. Hand</u>, Esquire, Springfield, Virginia, for the agency.

**BEFORE**
Franklin M. Kang
Administrative Judge

**INITIAL DECISION**

**INTRODUCTION**

     The appellant filed an appeal seeking relief under the Uniformed Services Employment and Reemployment Rights Act of 1994 (USERRA), alleging that the agency took improper actions based on his service as a reservist. Initial Appeal File (IAF), Tab 1. The appeal was twice dismissed without prejudice pursuant to an agreement between the parties as set forth in the record. IAF, Tabs 28-30; Refiled Appeal File (I-2 AF), Tabs 2-4; Second Refiled Appeal File (I-3 AF), Tab 1. The appellant withdrew his hearing request and the parties made close of record submissions. I-3 AF, Tabs 8, 11, 14, 15, 19, 20, 21. The Board has

jurisdiction over this matter.  38 U.S.C. § 4324.  For the reasons discussed below, the appellant's request for corrective action is GRANTED in part and DENIED in part.

## ANALYSIS AND FINDINGS

Overview

The appellant was a Special Agent (Criminal Investigator) with the Drug Enforcement Administration (DEA).  IAF, Tab 1 at 5; *see* IAF, Tab 7 at 68, 104. The appellant also was a member of the United States Air Force Reserves.  *Id*. Between November 2002 and November 2003, he was deployed to Operation Iraqi Freedom.  *Id*.  During this deployment, he became eligible for a within-grade-increase (WGI) from GS-12 step 2 to step 3.  IAF, Tab 1 at 6.  The appellant complained that the WGI was improperly delayed from February 23, 2003, to April 20, 2003, which resulted in the delay of subsequent step increases. *Id*. at 6.  The appellant was promoted to GS-13 in April 2016, but he complained that he would have received the promotion in February 2004 if the agency had processed the WGI properly.  *Id*. at 7.  The appellant filed this appeal in January 2020.  *Id*. at 1. The appellant retired in December 2020.  I-3 AF, Tab 20 at 46.

In this appeal, the appellant "brings two USERRA claims before the Board[:]" first, he seeks to have the WGI retroactively corrected from April 20, 2003, to February 23, 2003, with associated backpay; and second, to have his GS-13 promotion retroactively corrected to February 2004.  I-3 AF, Tab 20 at 4-5.  The appellant specifically asserted both USERRA reemployment and discrimination claims.  *Id*. at 8-11.

As discussed in more detail below, I conclude that this appeal is not barred by laches. I conclude that the appellant proved he was entitled to the WGI in February 2003 (as opposed to April 2003) and GRANT corrective action.  Lastly,

I conclude that the appellant did not prove he was entitled to the GS-13 promotion before he received it and DENY corrective action.

Applicable Law

There are two types of cases that arise under USERRA: (1) reemployment cases, in which an appellant claims that an agency has not met its obligations under 38 U.S.C. §§ 4312–4318 following the appellant's absence from civilian employment to perform uniformed service; and (2) discrimination cases, in which the appellant claims that an agency has committed one of seven actions that are prohibited if motivated by one of nine enumerated reasons, as set forth in 38 U.S.C. § 4311(a) and (b). *Bostwick v. Department of Agriculture*, 122 M.S.P.R. 269, ¶ 5 (2015).

*USERRA Reemployment Claims*

A reemployment claim arises under USERRA when an employee claims that an agency has not met its obligations under 38 U.S.C. §§ 4312–4318 following his absence from civilian employment to perform uniformed service. *Rassenfoss v. Department of the Treasury*, 121 M.S.P.R. 512, ¶ 10 (2014) (citing *Clavin v. U.S. Postal Service*, 99 M.S.P.R. 619, ¶ 5 (2005)). Unlike discrimination cases, an individual's rights under USERRA's reemployment provisions do not depend on the motivation for an agency's action (or inaction), and the agency bears the burden of proving that it met its statutory obligations. *Id*. Thus, in a reemployment claim, the appellant does not need to show that the agency acted with a discriminatory motive, and instead the agency must prove that it complied with USERRA. *Clavin*, 99 M.S.P.R. 619, ¶ 6.

As relevant here, 38 U.S.C. § 4316(a) provides that a person who is reemployed under this chapter is entitled to the seniority and other rights and benefits determined by seniority that the person had both when they started the person's uniformed service and any additional seniority and rights and benefits that such person would have attained if the person had remained continuously

employed. On the other hand, § 4316(b)(4) provides that someone who is absent from a position because of uniformed service is not entitled to any benefits to which the person would not otherwise be entitled if the person remained continuously employed.

*USERRA Discrimination Claims*

USERRA prohibits discrimination in employment on the basis of military service. *McGuffin v. Social Security Administration*, 942 F.3d 1099, 1107 (Fed. Cir. 2019) (citing 38 U.S.C. § 4311; *Erickson v. U.S. Postal Service*, 571 F.3d 1364 (Fed. Cir. 2009); *Sheehan v. Department of the Navy*, 240 F.3d 1009 (Fed. Cir. 2001)). Accordingly, USERRA prohibits denial of employment, reemployment, retention in employment, promotion, or any other benefit of employment, if the person's membership, application for membership, service, application for service, or obligation for service in the uniformed serves is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such membership or service. *Id*. (citing 38 U.S.C § 4311(a), (c)).

Generally, an employee making a USERRA claim under 38 U.S.C. § 4311 must show that: (1) the employee was denied a benefit of employment, and (2) the employee's military service was a substantial or motivating factor in the denial of such a benefit. *Adams v. Department of Homeland Security*, 3 F.4th 1375, 1377 (Fed. Cir. 2021) (citing *Sheehan*, 240 F.3d at 1013). The appellant has the burden of proving by a preponderance of the evidence that his membership in the uniformed services was a substantial or motivating factor in the adverse employment action. *McGuffin*, 942 F.3d at 1108 (citing 38 U.S.C. § 4311(c)(1)).[1]

---

[1] A preponderance of the evidence is the "degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue." 5 C.F.R. § 1201.4(q). This is a higher standard than the appellant must meet to establish Board jurisdiction, which is a

Military service is a motivating factor for an adverse employment action if the employer relied on, took into account, considered, or conditioned its decision on the employee's military-related absence or obligation. *McMillan v. Department of Justice*, 812 F.3d 1364, 1372 (Fed. Cir. 2016). An employee may meet his burden by submitting evidence from which such a motive may be fairly inferred. *Id*. As part of this analysis, the Board considers four, non-exclusive *Sheehan* factors: (1) proximity in time between the employee's military activity and the adverse employment action, (2) inconsistencies between the proffered reason and other actions of the employer, (3) an employer's expressed hostility towards members protected by the statute together with knowledge of the employee's military activity, and (4) disparate treatment of certain employees compared to other employees with similar work records or offenses. *McGuffin*, 942 F.3d at 1108 (citing *Sheehan*, 240 F.3d at 1014).

Once an employee has met this burden, the burden shifts to the employer to prove by preponderant evidence that it would have taken the adverse action anyway, for a valid reason. *McGuffin*, 942 F.3d at 1108 (citing *Sheehan*, 240 F.3d at 1013). An employer violates USERRA if it would not have taken the adverse employment action but for the employee's military service or obligation. *Id*. (quoting *Erickson*, 571 F.3d at 1368).

*USERRA Timeliness and Laches*

There is no statutory time limit on bringing USERRA claims. *Harper v. Department of the Navy*, 101 M.S.P.R. 166, ¶¶ 6-11 (2006). Nevertheless, an agency may bring the equitable defense of laches if there is an unreasonable delay that has prejudiced it. *Brown v. Department of the Air Force*, 88 M.S.P.R. 22, ¶¶ 5, 7 (2001) (noting that prejudice may arise from an inability to mount a

---

nonfrivolous allegation. I previously determined that the appellant met his burden at the jurisdictional stage. I-3 AF, Tab 16; IAF, Tab 14.

defense caused by loss of records, destruction of evidence, faded memories, or unavailability of witnesses).   An agency can prevail on a laches argument by demonstrating inexcusable delay by the appellant and prejudice resulting from that delay.  *Garcia v. Department of State*, 101 M.S.P.R. 172, ¶¶ 16-17 (2006).

Factual Background

*Agency Promotion Policies*

The DEA Personnel Manual 2250.4, effective June 9, 1992, set out the career development path for Special Agents.  IAF, Tab 7 at 107-15.  It set out two paths to promotion to GS-13.  First, 2250.43, 43-1, provided that a Special Agent may be considered for promotion to GS-13 after one year in grade if recommended by the Special Agent in Charge (SAC) based on the criteria established for the various categories of Special Agent assignments.  IAF, Tab 7 at 107-08.  Any such recommendation was forwarded to the Position Review Committee and then the Deputy Assistant Administrator for Operations for final concurrence.  *Id*.  Second, 2250.43, 43-2, provided that Special Agents may also be considered for promotion to GS-13 after three years or more service at GS-12 based on the SAC's personal recommendation, if they meet the following criteria: overall performance rating of excellent or above for past three years, were certified by the SAC to have the breadth of experience and ability required to perform at the GS-13 level, and had not been subject to any disciplinary action. *Id*. at 108.   The Office of Personnel would review any recommendation memoranda and forward it for evaluation to the Position Review Committee, which would then make a recommendation to the Deputy Assistant Administrator for final concurrence.  *Id*. at 109.  The policy provided that "No promotion will be automatic, but if all the above criteria are met, the SAC's personal recommendation will normally be accepted after review by the Position Review Committee."  *Id*. at 108.

On June 15, 2004, the agency issued a Revised Promotion Policy and Procedures memorandum.  IAF, Tab 7 at 70-77.  The policy specified that a Special Agent may be noncompetitively promoted to GS-13, but such promotions "*are neither an entitlement nor automatic.*"  *Id.* at 70 (original in italics).  It provided that promotions will be approved only after a GS-12 Special Agent has been in grade at least one year and has demonstrated competencies to perform at the GS-13 level, and must be based on established criteria and demonstrated ability to satisfactorily perform the higher graded duties.  *Id.*

On July 10, 2017, the agency issued a Career Progression Guide for Special Agents.  IAF, Tab 1 at 22-38.  This policy provides that GS-12 Special Agents are eligible for a "Time-in-Grade" promotion to a GS-13, after three years in grade, an overall rating of Acceptable (or higher) on his/her most recent performance appraisal, and no pending Office of Professional Responsibility Investigations or sustained adverse actions.  *Id.* at 25.

*Appellant's History with the Agency*

The appellant started as a GS-7 Special Agent on October 26, 1997.  IAF, Tab 7 at 104.  He received regular promotions to GS-9, GS-11, and GS-12.  *Id.* at 98, 100, 102.  As of February 25, 2001, the appellant was employed as a GS-12 step 1.  *Id.* at 98.

On November 8, 2002, the appellant sent a memorandum to his supervisor Lori Cassity, requesting that he receive a "grade increase."  IAF, Tab 1 at 12.  He wrote that he was "currently a GS-12/2" and would "reach eligibility for promotion to a GS-12/3 on February 28, 2003[,]" and that he believed his performance "supports this request for promotion."  *Id.*

On November 21, 2002, the Air Force issued orders requiring the appellant to report for active duty starting November 22, 2022.  IAF, Tab 7 at 96.  On December 11, 2002, the agency placed the appellant in "LWOP-US" (leave without pay – uniformed service).  *Id.* at 94.  At the time he was placed in this

status, the appellant was GS-12 step 2. *Id*. On December 20, 2002, Cassity submitted a Within-Grade Increase Record form through which she indicated the appellant was at an acceptable level of competence, began the waiting period for his current step on February 24, 2002, and the effective date for his next WGI would be February 23, 2003. *Id*. at 29.

On November 24, 2003, the agency issued a Standard Form (SF) 50 documenting the appellant's return to duty. *Id*. at 79. The appellant provided a Certificate of Release or Discharge from Active Duty, showing a period of service between November 22, 2002, and November 21, 2003. *Id*. at 66.

After his return from active duty, the agency issued a performance appraisal for the period between January and December 31, 2002. IAF, Tab 7 at 83. The appellant's rating was "Significantly Exceeds Requirements." *Id*. at 83-92. The agency issued a WGI from GS-12 step 2 to step 3, effective April 20, 2003. IAF, Tab 7 at 81.

On March 10, 2004, the appellant submitted a promotion request memorandum to Cassity, notifying her that he would "be eligible for promotion to a GS13 on 04/20/04." IAF, Tab 1 at 16. On April 1, 2004, Cassity recommended that the appellant be promoted to GS-13 as of "April 20, 2004, his date of eligibility." *Id*. at 17-18. In her memorandum in support, Cassity positively cited both the appellant's performance and his deployment, including his ability to quickly change between roles. *Id*. On April 18, 2004, the appellant received a WGI from GS-12 step 3 to GS-12 step 4. *Id*. at 19.

On April 20, 2004, Cassity followed up with her supervisors about the appellant's promotion packet. IAF, Tab 1 at 20. She noted that the appellant "is eligible for his 13 as of today[.]" *Id*. The agency had not processed the promotion by June 2004, so the appellant followed up with his management chain. *Id*. at 21. Susan Blair emailed to say that his promotion package, "along with the packages of several other people" was returned to the Division based on

instructions to "hold these" until new instructions were issued, but "nobody knows when this will happen." *Id*.

On April 17, 2016, the agency promoted the appellant from GS-12 step 9 to GS-13 step 5.  IAF, Tab 7 at 68.  The appellant retired December 31, 2020.  I-3 AF, Tab 20 at 46.

Analysis: the Appeal is Not Barred by Laches

To prevail on a laches defense, the agency must demonstrate that the appellant had an inexcusable delay in bringing suit and prejudice.  *Garcia*, 101 M.S.P.R. 172, ¶ 16.  In his close of record declaration, the appellant said that he feared he would be passed over for future opportunities if he went around his chain of command, filed a grievance, or otherwise sought legal redress.  I-3 AF, Tab 20 at 46.  He also said he could not afford to take on the financial obligation in support of a claim that would likely span multiple years before resolution.  *Id*.  However, by 2020, the situation changed because he had completed more than 20 years of civilian service and was eligible for Law Enforcement Office (LEO) retirement, and thus could count on an LEO pension plus fulltime civilian employment to enable him to "stand up for myself and file a USERRA appeal."  *Id*.  He also said that he viewed any potential retribution if his chain of command heard about the USERRA appeal "as short lived and hopefully inconsequential" in light of his upcoming planned retirement.  *Id*.

It is not reasonable for an employee to assume the worst and wait to appeal just because there is a possibility that he may be subject to reprisal for filing a USERRA claim.  The appellant's 17-year delay in filing the appeal – from 2003 when he returned from uniformed service until 2020 when he filed this appeal – was "inexcusable" as that term is used in *Garcia*.  However, that is not the end of the analysis.  Rather, the agency also must show prejudice.  The agency failed to do so.  This is a relatively straightforward case about dates relative to eligibility for WGIs and promotions.  The appellant's relevant SF-50s are part of his

permanent personnel file and the agency had no difficulty providing them for the agency file. Likewise, the agency produced its promotion policies in effect at different times. Thus, the agency did not demonstrate that it lost critical evidence due to the passage of time. Because laches requires that the agency prove both inexcusable delay and prejudice, the agency's failure to prove prejudice precludes a finding of laches.

Appellant is Entitled to Correction of his WGI

An employee is entitled to a WGI after completing a required amount of service, so long as the employee's work is at an acceptable level of competence. 5 U.S.C. § 5335(a); 5 C.F.R. 531.404. For steps 1, 2, and 3, a WGI is due each year (every 52 weeks, using the language of the statute). 5 U.S.C. § 5335(a)(1). The regulations provide that military service is creditable service for purposes of a WGI if the employee returns to a pay status through the exercise of a restoration right. 5 C.F.R. §§ 353.107, 531.406(c)(1)(i).

Here, the appellant received a promotion to GS-12 step 1 as of February 25, 2001. Because there is no evidence that his performance was ever not at an acceptable level of competence, he was eligible for a WGI to step 2 as of February 25, 2002. In November 2002, the appellant wrote that he was eligible for the GS-12 step 3 WGI as of February 28, 2003. IAF, Tab 1 at 12. A "Within-Grade Increase Record" indicated that the waiting period for the GS-12 step 2 started on February 24, 2002, and the effective date for the next WGI would be February 23, 2003. *Id*. at 13.

In discovery, the agency admitted that "**under the escalator principle of USERRA, SA Knox should have received his within-grade step increase to GS-12 Step 3 without delay in February 2003.**" I-3 AF, Tab 15 at 226 (agency's February 25, 2020 responses to requests for admissions). Not only is the agency's admission binding, a straightforward application of the statute and regulations lead to the conclusion that the appellant was entitled to the WGI from

GS-12 step 2 to step 3 in February 2003, because this was consistent with his history of step increases. There is nothing in the record that would show that the appellant would not have been entitled to the WGI if he had remained employed with the agency rather than being deployed.

It is appropriate to treat a WGI as a USERRA reemployment claim. A WGI is a right or benefit of employment for purposes of 38 U.S.C. § 4316. Indeed, the regulations consider a WGI as related to reemployment. 5 C.F.R. § 353.107. Applying the framework for a USERRA reemployment claim, it does not matter whether the agency had any discriminatory intent based on uniformed service. Rather, it is sufficient for the appellant to show, as he did here, that he was entitled to a benefit of employment and did not receive it.

The agency did not meet its burden of showing that it complied with the law. First, as it admitted during discovery, the appellant should have received the WGI in February 2003. Second, the agency has not identified any reason that it delayed the WGI. Thus, the appellant is entitled to corrective action based on a USERRA reemployment analysis.

Relatedly, I conclude that the appellant did not satisfy his burden on a USERRA discrimination claim. While the appellant showed that he was denied a benefit of employment, he did not show by preponderant evidence that his membership in the uniformed services was a substantial or motivating factor in the delay of his WGI. There was no reason articulated by anyone about why the WGI was delayed. Nor is there any apparent link between the appellant's uniformed service and the delay he experienced. It is not the case that the agency failed to process the WGI at all and made him wait for a year, as might be expected if the agency were not counting as creditable service the time he was deployed, or delayed it based on some other amount of time clearly related to his uniformed service. The appellant has not shown that it is more likely than not that the delay was based on discrimination for uniformed service as opposed to

random administrative error.  In the language of the statute, I find that the appellant did not show that it was more likely than not that his uniformed service was a substantial or motivating factor in the delay.

<u>Appellant is Not Entitled to Correction of Promotion</u>

The appellant conceded that the 1992 Personnel Manual was "the source of the GS-13 promotion policy in effect during February 2004[.]"  I-3 AF, Tab 21 at 15.  The appellant also agreed that he was seeking promotion based on serving three years in grade at the GS-12 level.  *Id.*

As set out above, the appellant was first promoted to GS-12 on February 25, 2001.  IAF, Tab 7 at 98.  Thus, he completed three years in grade as of February 2004, and was *eligible* for promotion to GS-13 as of that same month.  However, unlike a WGI, which is generally automatic, eligibility for promotion does *not* equate to entitlement for promotion.  The 1992 policy explicitly provided that no promotion would be automatic.  IAF, Tab 7 at 108.

The appellant complained that the delay from February 2004, when he was eligible, until April 2004 when his promotion packet was submitted was prejudicial because in the meantime, the agency headquarters "had stopped processing GS13 promotion packages" apparently in anticipation of the policy eventually released in June 2004.  I-3 AF, Tab 20 at 21.  The appellant stated in his declaration that a colleague from his basic agent training course received the GS-13 promotion in March 2004.  *Id.* at 45.  Based on this information, the appellant argued that his promotion "would have cleared HQ *before* HQ stopped processing GS 13 promotions" if it had been submitted earlier.  *Id.* at 22.

There are several problems with this argument.  First, there is no indication when the colleague submitted his promotion request, only that he was promoted in March 2004.  Second, it does not change the fundamental fact that under the 1992 policy, all GS-13 promotions were discretionary and not an entitlement.

The appellant argued that the GS-13 promotion was a "career ladder promotion" to which he was entitled. I-3 AF, Tab 20 at 26. This argument is not well taken because, by definition, a career ladder promotion must be spelled out in a promotion plan. 5 C.F.R. § 335.103(c)(3)(i). Here, the GS-13 promotion was *not* part of a career ladder, but was instead a discretionary promotion based on an incumbent's position. IAF, Tab 7 at 40 (referring to career ladder promotions through GS-12).

Because the GS-13 promotion was not automatic, the appellant cannot show that it was a right of employment to which he otherwise would have been entitled under 38 U.S.C. § 4316. Therefore, the appellant cannot establish a USERRA reemployment case with respect to this promotion.

I next turn to the USERRA discrimination analysis. The Board has previously held that promotion claims are analyzed differently in USERRA discrimination cases. *Becwar v. Department of Labor*, 115 M.S.P.R. 689 (2011). There, the Board that it is error to place the burden on an appellant to prove entitlement to a promotion as a threshold issue. *Id.*, ¶ 7. It held that in discrimination cases: the Board does not consider whether the applicant was entitled to or qualified for the position, but rather analyzes whether the employee has shown that his uniformed service was a motivating factor in the action, and if so, whether the agency has shown that it would have taken the same action despite the employee's uniformed service. *Id.*

The appellant said in his close of record declaration that he requested that Cassity submit his promotion package in February 2004, and she advised him to "submit a memo of request in March 2004 to complete a full year service as a GS-12/03 before I would be eligible for my GS-13 promotion[,]" and referred to his step 3 increase on April 20, 2003. I-3 AF, Tab 20 at 44. He argued that the "only" reason Cassity delayed her recommendation was her confusion about his date of eligibility. *Id*. at 32-33 (citing IAF, Tab 1 at 17-18).

The appellant argued that it was reasonably certain he would have received the promotion in February 2004. He cited agency reports showing that in 1998, 1999, and 2001 to 2003, the agency approved the vast majority of GS-13 promotion requests, and denied them only for insufficient documentation, outdated cases, or low-level investigation work, or for issues with the Office of Professional Responsibility. I-3 AF, Tab 15 at 173-78.

In support of his argument, the appellant cited the Supreme Court decision in *Tilton v. Missouri Pacific Railroad Company*, 376 U.S. 169 (1964) (deciding case under the Universal Military Training and Service Act, which was a predecessor to USERRA) and the Ninth Circuit Court of Appeals decision in *Huhmann v. Federal Express Corporation*, 874 F.3d 1102 (9th Cir. 2017) (a USERRA discrimination case decided under 38 U.S.C. § 4311).

In *Tilton*, the Supreme Court evaluated a claim that certain servicemembers suffered a loss of seniority as railroad carmen because, during their deployments, junior employees were temporarily upgraded. *Tilton*, 376 U.S. at 173-74. Under the employer's policy, carman seniority was provided automatically, and the railroad had no choice but to give them the seniority. *Id.* at 178. The Court continued that a "returning veteran cannot claim a promotion that depends solely on satisfactory completion of a prerequisite period of employment training unless he first works that period," but upon completion of that training, may "insist upon a seniority date reflecting the delay caused by military service." *Id.* at 181.

In *Huhmann*, the employee was a pilot for FedEx. He was a pilot before a new collective bargaining agreement was ratified, was deployed, and returned to employment after that agreement was ratified and after he discharged. *Huhmann*, 874 F.3d at 1104. Consistent with the collective bargaining agreement, he received a general signing bonus (of $7,400) after he returned to employment. *Id.* at 1105. The employee filed a USERRA discrimination complaint because he had been accepted into a first officer training program before his deployment,

"virtually immediately after his return to FedEx," he underwent that training, and the signing bonus for first officers was much higher ($17,700) than the general signing bonus. *Id*. at 1104-05. The Ninth Circuit agreed with the district court that it was reasonably certain that the employee would have qualified for the first officer signing bonus if he had not been deployed, because the employee had been accepted into the training program before deploying and completed the required training shortly after returning from uniformed service. *Id*. at 1106.

These cases are not controlling because they dealt with entitlements (either to seniority that was due automatically or a signing bonus guaranteed by a collective bargaining agreement), and considered whether it was reasonably certain that the employee would have received that entitlement if not for uniformed service. Here, by contrast, promotion to GS-13 was not an entitlement.

Essentially, the appellant argues that if his GS-13 promotion packet had been submitted in February 2004, it is *reasonably certain* that he would have received that promotion, as his class colleague did. The reason it was not submitted earlier is Cassity's failure to treat him as being eligible in February (when he actually had three years in grade) but thought he needed to serve a year at the GS-12 step 3 level, which because of the agency's error in calculating his WGI, was delayed until April 2004. By April 2004, the agency delayed considering promotion packages until after it announced the new policy in June 2004.

Applying *Becwar*, when evaluating a discrimination claim (as distinguished from a reemployment claim), the appellant was not required to show that he was entitled to a promotion. Rather, the Board applies the usual analysis of whether he can show that his uniformed service was a motivating factor and whether the agency can show it would have done the same thing anyway.

The agency did not rebut the appellant's declaration that Cassity told him to wait until he had completed a year in the GS-12 step 3 level, and that she mistakenly believed he was eligible for promotion consideration as of April 2004. However, for the reasons discussed above regarding the USERRA discrimination claim on the WGI, the appellant did not show that it is more likely than not that his uniformed service played a role in the delay of his WGI. The delayed WGI was a mistake (and one that the Board can remedy under the USERRA reemployment analysis), but there is no evidence that uniformed service played a role (let alone a substantial or motivating role) in causing that mistake, or in causing any follow-on consequences of that mistake, such as delaying the GS-13 promotion package to April 2004.[2] The only evidence on uniformed service, the promotion packet from Cassity, cited the appellant's uniformed service positively. IAF, Tab 1 at 17-18.

For the foregoing reasons, the appellant did not establish that he was entitled to a promotion for purposes of the USERRA reemployment analysis. He likewise did not establish that his uniformed service was a substantial or motivating factor in the agency's 2004 decision regarding his promotion, and thus did not establish a USERRA discrimination claim.

## DECISION

The appellant's request for corrective action is GRANTED with respect to the WGI, and DENIED with respect to the GS-13 promotion.

---

[2] If I were to assume that the appellant could show substantial or motivating factor, that would then require the agency to prove that it would have done the same thing anyway. On this analysis, I would find that the agency could establish prejudice for purposes of laches. Analyzing what the agency might have done if his promotion package had been submitted a few months earlier would require considering the recollection of personnel involved in processing such packages. The passage of 17 years obviously would impact the agency's ability to identify appropriate witnesses and then deal with attendant issues of faded memories.

## ORDER

I **ORDER** the agency to pay the appellant by check or through electronic funds transfer for the appropriate amount of back pay, with interest and to adjust benefits with appropriate credits and deductions in accordance with the Office of Personnel Management's regulations no later than 60 calendar days after the date this initial decision becomes final. I **ORDER** the appellant to cooperate in good faith with the agency's efforts to compute the amount of back pay and benefits due and to provide all necessary information requested by the agency to help it comply.

If there is a dispute about the amount of back pay due, I **ORDER** the agency to pay the appellant by check or through electronic funds transfer for the undisputed amount no later than 60 calendar days after the date this initial decision becomes final. The appellant may then file a petition for enforcement with this office to resolve the disputed amount.

I **ORDER** the agency to inform the appellant in writing of all actions taken to comply with the Board's Order and the date on which it believes it has fully complied. If not notified, the appellant must ask the agency about its efforts to comply before filing a petition for enforcement with this office.

For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached. I **ORDER** the agency to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

18

## INTERIM RELIEF

Although the appellant is the prevailing party, I have determined not to order interim relief pursuant to 5 U.S.C. § 7701(b)(2)(A). "[T]here is an unresolved question as to whether interim relief under 5 U.S.C. § 7701(b)(2) is available in USERRA cases." *Erickson v. U.S. Postal Service*, 120 M.S.P.R. 468, ¶ 12 (2013) (internal citations omitted). Moreover, because the appellant is retired, the amount to be recovered is payable as a lump sum only. To avoid a situation in which the appellant may have to refund monies received, it would be inappropriate to award interim relief.

FOR THE BOARD: _____/S/_____

Franklin M. Kang
Administrative Judge

## ENFORCEMENT

If, after the agency has informed you that it has fully complied with this decision, you believe that there has not been full compliance, you may ask the Board to enforce its decision by filing a petition for enforcement with this office, describing specifically the reasons why you believe there is noncompliance. Your petition must include the date and results of any communications regarding compliance, and a statement showing that a copy of the petition was either mailed or hand-delivered to the agency.

Any petition for enforcement must be filed no more than 30 days after the date of service of the agency's notice that it has complied with the decision. If you believe that your petition is filed late, you should include a statement and evidence showing good cause for the delay and a request for an extension of time for filing.

## NOTICE TO PARTIES CONCERNING SETTLEMENT

The date that this initial decision becomes final, which is set forth below, is the last day that the parties may file a settlement agreement, but the administrative judge may vacate the initial decision in order to accept such an agreement into the record after that date. *See* 5 C.F.R. § 1201.112(a)(4).

## NOTICE TO APPELLANT

This initial decision will become final on **October 26, 2022**, unless a petition for review is filed by that date. This is an important date because it is usually the last day on which you can file a petition for review with the Board. However, if you prove that you received this initial decision more than 5 days after the date of issuance, you may file a petition for review within 30 days after the date you actually receive the initial decision. If you are represented, the 30-day period begins to run upon either your receipt of the initial decision or its receipt by your representative, whichever comes first. You must establish the date on which you or your representative received it. The date on which the initial decision becomes final also controls when you can file a petition for review with one of the authorities discussed in the "Notice of Appeal Rights" section, below. The paragraphs that follow tell you how and when to file with the Board or one of those authorities. These instructions are important because if you wish to file a petition, you must file it within the proper time period.

## BOARD REVIEW

You may request Board review of this initial decision by filing a petition for review.

If the other party has already filed a timely petition for review, you may file a cross petition for review. Your petition or cross petition for review must state your objections to the initial decision, supported by references to applicable laws, regulations, and the record. You must file it with:

20

The Clerk of the Board
Merit Systems Protection Board
1615 M Street, NW.
Washington, DC 20419

A petition or cross petition for review may be filed by mail, facsimile (fax), personal or commercial delivery, or electronic filing.  A petition submitted by electronic filing must comply with the requirements of 5 C.F.R. § 1201.14, and may only be accomplished at the Board's e-Appeal website (https://e-appeal.mspb.gov).

### Criteria for Granting a Petition or Cross Petition for Review

Pursuant to 5 C.F.R. § 1201.115, the Board normally will consider only issues raised in a timely filed petition or cross petition for review. Situations in which the Board may grant a petition or cross petition for review include, but are not limited to, a showing that:

(a)  The initial decision contains erroneous findings of material fact. (1) Any alleged factual error must be material, meaning of sufficient weight to warrant an outcome different from that of the initial decision. (2) A petitioner who alleges that the judge made erroneous findings of material fact must explain why the challenged factual determination is incorrect and identify specific evidence in the record that demonstrates the error. In reviewing a claim of an erroneous finding of fact, the Board will give deference to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on the observation of the demeanor of witnesses testifying at a hearing.

(b) The initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case. The petitioner must explain how the error affected the outcome of the case.

(c) The judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case.

(d) New and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. To constitute new evidence, the information contained in the documents, not just the documents themselves, must have been unavailable despite due diligence when the record closed.

As stated in 5 C.F.R. § 1201.114(h), a petition for review, a cross petition for review, or a response to a petition for review, whether computer generated, typed, or handwritten, is limited to 30 pages or 7500 words, whichever is less. A reply to a response to a petition for review is limited to 15 pages or 3750 words, whichever is less. Computer generated and typed pleadings must use no less than 12 point typeface and 1-inch margins and must be double spaced and only use one side of a page. The length limitation is exclusive of any table of contents, table of authorities, attachments, and certificate of service. A request for leave to file a pleading that exceeds the limitations prescribed in this paragraph must be received by the Clerk of the Board at least 3 days before the filing deadline. Such requests must give the reasons for a waiver as well as the desired length of the pleading and are granted only in exceptional circumstances. The page and word limits set forth above are maximum limits. Parties are not expected or required to submit pleadings of the maximum length. Typically, a well-written petition for review is between 5 and 10 pages long.

If you file a petition or cross petition for review, the Board will obtain the record in your case from the administrative judge and you should not submit anything to the Board that is already part of the record.  A petition for review must be filed with the Clerk of the Board no later than the date this initial decision becomes final, or if this initial decision is received by you or your

representative more than 5 days after the date of issuance, 30 days after the date you or your representative actually received the initial decision, whichever was first.  If you claim that you and your representative both received this decision more than 5 days after its issuance, you have the burden to prove to the Board the earlier date of receipt.  You must also show that any delay in receiving the initial decision was not due to the deliberate evasion of receipt. You may meet your burden by filing evidence and argument, sworn or under penalty of perjury (*see* 5 C.F.R. Part 1201, Appendix 4) to support your claim.  The date of filing by mail is determined by the postmark date.  The date of filing by fax or by electronic filing is the date of submission.  The date of filing by personal delivery is the date on which the Board receives the document.  The date of filing by commercial delivery is the date the document was delivered to the commercial delivery service.  Your petition may be rejected and returned to you if you fail to provide a statement of how you served your petition on the other party.  *See* 5 C.F.R. § 1201.4(j).  If the petition is filed electronically, the online process itself will serve the petition on other e-filers.  *See* 5 C.F.R. § 1201.14(j)(1).

A cross petition for review must be filed within 25 days after the date of service of the petition for review.

## ATTORNEY FEES

If no petition for review is filed, you may ask for the payment of attorney fees (plus costs, expert witness fees, and litigation expenses, where applicable) by filing a motion with this office as soon as possible, but no later than 60 calendar days after the date this initial decision becomes final.  Any such motion must be prepared in accordance with the provisions of 5 C.F.R. Part 1201, Subpart H, and applicable case law.

**NOTICE TO AGENCY/INTERVENOR**

The agency or intervenor may file a petition for review of this initial decision in accordance with the Board's regulations.

**NOTICE OF APPEAL RIGHTS**

You may obtain review of this initial decision only after it becomes final, as explained in the "Notice to Appellant" section above. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this decision when it becomes final, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date this decision becomes final. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after this decision becomes final</u> under the rules set out in the Notice to Appellant section, above. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. ____ , 137 S. Ct. 1975 (2017). If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling

condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after this decision becomes final as explained above. 5 U.S.C. § 7702(b)(1).

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section

26

2302(b) other than practices described in section 2302(b)(8) or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.  The court of appeals must <u>receive</u> your petition for review within **60 days** of <u>the date this decision becomes final</u> under the rules set out in the Notice to Appellant section, above.  5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx



**DEFENSE FINANCE AND ACCOUNTING SERVICE**
**Civilian Pay Operations**

# DFAS BACK PAY CHECKLIST

The following documentation is required by DFAS Civilian Pay to compute and pay back pay pursuant to 5 CFR § 550.805. Human resources/local payroll offices should use the following checklist to ensure a request for payment of back pay is complete. Missing documentation may substantially delay the processing of a back pay award. **More information may be found at: https://wss.apan.org/public/DFASPayroll/Back%20Pay%20Process/Forms/AllItems.aspx.**

**NOTE: Attorneys' fees or other non-wage payments (such as damages) are paid by vendor pay, not DFAS Civilian Pay.**

☐  1) Submit a **"SETTLEMENT INQUIRY - Submission"** Remedy Ticket. Please identify the specific dates of the back pay period within the ticket comments.

<u>Attach the following documentation to the Remedy Ticket, or provide a statement in the ticket comments as to why the documentation is not applicable:</u>

☐  2) Settlement agreement, administrative determination, arbitrator award, or order.

☐  3) Signed and completed "Employee Statement Relative to Back Pay".

☐  4) All required SF50s (new, corrected, or canceled). **\*\*\*Do not process online SF50s until notified to do so by DFAS Civilian Pay.\*\*\***

☐  5) Certified timecards/corrected timecards. **\*\*\*Do not process online timecards until notified to do so by DFAS Civilian Pay.\*\*\***

☐  6) All relevant benefit election forms (e.g. TSP, FEHB, etc.).

☐  7) Outside earnings documentation. Include record of all amounts earned by the employee in a job undertaken during the back pay period to replace federal employment. Documentation includes W-2 or 1099 statements, payroll documents/records, etc. Also, include record of any unemployment earning statements, workers' compensation, CSRS/FERS retirement annuity payments, refunds of CSRS/FERS employee premiums, or severance pay received by the employee upon separation.

**Lump Sum Leave Payment Debts:** When a separation is later reversed, there is no authority under 5 U.S.C. § 5551 for the reinstated employee to keep the lump sum annual leave payment they may have received. The payroll office must collect the debt from the back pay award. The annual leave will be restored to the employee. Annual leave that exceeds the annual leave ceiling will be restored to a separate leave account pursuant to 5 CFR § 550.805(g).



**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts**.**

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

   a. Employee name and social security number.
   b. Detailed explanation of request.
   c. Valid agency accounting.
   d. Authorized signature (Table 63).
   e. If interest is to be included.
   f. Check mailing address.
   g. Indicate if case is prior to conversion.  Computations must be attached.
   h. Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected (if applicable).

Attachments to AD-343

1. Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement (if applicable).
2. Copies of SF-50s (Personnel Actions) or list of salary adjustments/changes and amounts.
3. Outside earnings documentation statement from agency.
4. If employee received retirement annuity or unemployment, provide amount and address to return monies.
5. Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)
6. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.
7. If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases:  (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

   a. Must provide same data as in 2, a-g above.
   b. Prior to conversion computation must be provided.
   c. Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.

CERTIFICATE OF SERVICE

I certify that the attached Document(s) was (were) sent as indicated this day to each of the following:

Appellant

Electronic Mail          Anthony W. Knox
                         2768 Chatswood Drive
                         Trophy Club, TX 76262

Appellant Representative

Electronic Mail          Kevin Byrnes
                         FH&H Attorneys
                         1751 Pinnacle Drive, 10th Floor
                         Tysons, VA 22102

Electronic Mail          Rachel Leahey
                         1751 Pinnacle Drive, Suite 1000
                         McLean, VA 22102

Agency Representative

Electronic Mail          Gregg A. Hand
                         Department of Justice
                         Drug Enforcement Administration
                         Office of Chief Counsel
                         8701 Morrissette Drive
                         Springfield, VA 22152-1080

| September 21, 2022 | /s/ |
|---|---|
| (Date) | Siu Wai Tam |
| | Paralegal Specialist |

## CERTIFICATE OF SERVICE

I certify that on August 29, 2023, this Brief of Petitioner Anthony Knox was filed electronically using the CM/ECF system and served via the CM/ECF system on registered counsel.

By counsel,

/s/Kevin E. Byrnes
Kevin E. Byrnes, Esq.
Grace H. Williams, Esq.
Fluet
1751 Pinnacle Drive, Suite 1000
Tysons, VA 22102
Telephone: (703) 590-1234
Fax: (703) 590-0366
kbyrnes@fluet.law
gwilliams@fluet.law

*Counsel for Petitioner*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.      This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a) and Federal Circuit Rule 32(a).

This brief contains 12,443 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b).

2.      This brief complies with the or typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

This brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point font, Times New Roman.

/s/Kevin E. Byrnes
Kevin E. Byrnes, Esq.
Grace H. Williams, Esq.
Fluet
1751 Pinnacle Drive, Suite 1000
Tysons, VA 22102
Telephone: (703) 590-1234
Fax: (703) 590-0366
Kbyrnes@fluet.law
gwilliams@fluet.law

*Counsel for Petitioner*