**2023-1160**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT**

---

**ANTHONY W. KNOX,**
**Petitioner,**
**v.**

**DEPARTMENT OF JUSTICE,**
**Respondent.**

---

**On Appeal from the Merit Systems Protection Board
in No. SF-4324-20-0191-I-3**

---

**BRIEF FOR RESPONDENT**

---

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

TARA K. HOGAN
Assistant Director

STEPHEN J. SMITH
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Washington, DC 20044
Tel: (202) 353-0546

October 12, 2023                     Attorneys for Defendant

TABLE OF CONTENTS ........................................................................ i

TABLE OF AUTHORITIES .............................................................. iii

STATEMENT OF THE ISSUES .......................................................... 1

STATEMENT OF THE CASE SETTING OUT RELEVANT FACTS ................. 1

I.      Nature Of The Case ...................................................... 1

II.     USERRA .................................................................... 2

III.    Background ................................................................ 3

IV.     Mr. Knox's MSPB Appeal ............................................... 6

SUMMARY OF THE ARGUMENT .................................................... 12

ARGUMENT .............................................................................. 15

I.      The Court's Review Of The MSPB Decision Is Limited ............ 15

II.     Substantial Evidence Supports The Board's Determination That
        Mr. Knox Was Not Reasonably Certain To Have Been Promoted In
        February 2004 ............................................................ 16

III.    Substantial Evidence Supports The MSPB's Determination That
        Promotion To GS-13 Was Not Generally Granted To All Employees ......... 21

IV.     Substantial Evidence Supports The MSPB's Determination That
        Mr. Knox's Military Service Was Not A Motivating Factor ............ 22

V.      The Administrative Judge's Discovery Rulings Are Not An Abuse Of
        Discretion ................................................................ 26

        A.      The Administrative Judge Did Not Abuse His Discretion By
                Dismissing Mr. Knox's Motion To Compel For Failing To Comply
                With The Meet And Confer Requirement ......................... 27

        B.      The Administrative Judge Did Not Abuse His Discretion By Failing

To Suspend The Case..........................................................................28

  C. The Administrative Judge Did Not Abuse His Discretion By Addressing Substantive Matter During The Prehearing Conference......................................................................................29

VI. DEA Did Not Abandon Its Laches Defense .................................29

CONCLUSION .................................................................................30

# TABLE OF AUTHORITIES

<u>Cases</u>

*Clavin v. U.S. Postal Serv.*,
    99 M.S.P.R. 619 ................................................................................ 2

*Consol. Edison Co. v. NLRB*,
    305 U.S. 197 (1938) ........................................................................15

*Cross v. Dep't of Transp.*,
    127 F.3d 1443 (Fed. Cir. 1997)....................................................15, 16

*Curtin v. OPM*,
    846 F.2d 1373 (Fed. Cir. 1988)....................................................14, 26

*Eby v. United States*,
    823 F. App'x 933 (Fed. Cir. 2020) ........................................16, 17, 18

*Erickson v. U.S. Postal Serv.*,
    571 F.3d 1364 (Fed. Cir. 2009)........................................................3, 23

*Gould v. Control Laser Corp.*,
    705 F.2d 1340 (Fed. Cir. 1983)........................................................28

*Graves v. Dep't of the Navy*,
    451 F. App'x 931 (Fed. Cir. 2011) ....................................................26

*Graybill v. U.S. Postal Serv.*,
    782 F.2d 1567 (Fed. Cir. 1986)........................................................15

*Harris v. Dep't of Veterans Affairs*,
    142 F.3d 1463 (Fed. Cir. 1998)........................................................16

*Hawkins v. DOJ*,
    DE-4324-15-0507-B-1, 2016 MSPB LEXIS 6920 (Nov. 30, 2016)...................22

*Hayden v. Dep't of the Air Force*,
    812 F.3d 1351 (Fed. Cir. 2016)........................................16, 17, 18

*Hayes v. Dep't of the Navy*,
    727 F.2d 1535 (Fed. Cir. 1984)........................................................15

*In re Jolley*,
    308 F.3d 1317 (Fed. Cir. 2002)......................................................................25

*Jones v. Dep't of Health & Hum. Servs.*,
    834 F.3d 1361, 1369 (Fed. Cir. 2016) ......................................................24

*Maddox v. MSPB*,
    759 F.2d 9 (Fed. Cir. 1985) ........................................................................15

*McCarthy v. Int'l Boundary & Water Comm'n*,
    497 F. App'x 4 (Fed. Cir. 2012) ................................................................27

*McKinney v. Mo. Kan.-Tex. R.R. Co.*,
    357 U.S. 265 (1958) ....................................................................................16

*Petty v. Metro. Gov't of Nashville-Davidson Cty.*,
    538 F.3d 431 (6th Cir. 2008) ........................................................................ 3

*Sheehan v. Dep't of The Navy*,
    240 F.3d 1009 (Fed. Cir. 2001)............................................................*passim*

*Smith v. U.S. Postal Serv.*,
    540 F.3d 1364 (Fed. Cir. 2008)..................................................................... 2

*Tilton v. Mo. Pac. R.R. Co.*,
    376 U.S. 169, 179 (1964).............................................................................16

<u>Statutes</u>

5 U.S.C. § 7703(c)(1)-(3) ..............................................................................15

38 U.S.C. §§ 4301-4335..............................................................................1, 21

38 U.S.C. § 4311(a) ................................................................................3, 15, 22

38 U.S.C. § 4312(a) ......................................................................................... 2

38 U.S.C. §§ 4312-18 ...................................................................................... 2

38 U.S.C. §§ 4316............................................................................................21

38 U.S.C. §§ 4316(b)(4)..................................................................................22

Regulations

5 C.F.R. § 353.106(c)......................................................................*passim*

5 C.F.R. § 1201.28...............................................................................28

## <u>STATEMENT OF RELATED CASES</u>

Pursuant to Federal Circuit Rule 47.5, respondent's counsel states that he is unaware of any other appeal in or from this action that was previously before this Court or any other appellate court under the same or similar title.  Respondent's counsel also states that he is not aware of any cases pending before this Court that may directly affect or be directly affected by the decision in this appeal.  Finally, respondent's counsel notes that the MSPB has dismissed petitioner's motion for attorney's fees without prejudice, pending the outcome of this appeal.  MSPB Docket No. SF-4324-20-0191-A-1.

## STATEMENT OF THE ISSUES

1.     Whether the MSPB's determination that the Drug Enforcement Administration's (DEA) decision not to promote Mr. Knox to a GS-13 position in 2004 did not violate USERRA, is supported by substantial evidence.

2.     Whether the MSPB correctly concluded, in light of DEA's discretionary promotion policy, that it was not reasonably certain that Mr. Knox would be promoted.

3.     Whether the MSPB's determination that DEA did not discriminate against Mr. Knox in violation of USERRA was supported by substantial evidence.

4.     Whether the administrative judge abused his discretion when making various discovery determinations.

## STATEMENT OF THE CASE SETTING OUT RELEVANT FACTS

## I.    Nature Of The Case

Petitioner, Anthony Knox, seeks review of a decision of the Merit Systems Protection Board (MSPB or board), dated September 21, 2022. At the board, Mr. Knox alleged that the Department of Justice (DOJ) violated the Uniformed Services Employment and Reemployment Rights Act of 1994 (USERRA) (codified as amended at 38 U.S.C. §§ 4301-4335) when it failed to provide Mr. Knox with a within grade increase and promotion due to military service in the Air Force Reserves. Appx88-135. The MSPB granted Mr. Knox's request for

corrective action with regard to a within grade increase, but denied Mr. Knox's

request regarding the promotion.  Appx1-28.

## II.  <u>USERRA</u>

USERRA provides service members protection in their civilian employment

after completing their military obligations.  USERRA provides service members a

right to reemployment in their civilian employment after completion of their

military obligations.  *See* 38 U.S.C. § 4312(a).  For reemployment claims under

USERRA, an agency must prove only that it has met its statutory obligations to the

employee.  38 U.S.C. §§ 4312-18; *see also Clavin v. U.S. Postal Serv.*, 99

M.S.P.R. 619, 622-23 (2005).  Unlike a discrimination claim, a reemployment

claim does not turn on the agency's motivation for a decision.  *See, e.g., Smith v.*

*U.S. Postal Serv.*, 540 F.3d 1364, 1366-67 (Fed. Cir. 2008) (examining

reemployment claim only with respect to agency's obligations, not its intent);

*Clavin*, 99 M.S.P.R. at 623.

The regulations provide that an agency "must consider employees absent on

military duty for any incident or advantage of employment that they may have

been entitled to had they not been absent."  5 C.F.R. § 353.106(c).  This

determination is made by:

> (1) Considering whether the "incident or advantage" is one generally
> granted to all employees in that workplace and whether it was denied
> solely because of absence for military service;

(2) Considering whether the person absent on military duty was treated the same as if the person had remained at work; and

(3) Considering whether it was reasonably certain that the benefit would have accrued to the employee but for the absence for military service.

5 C.F.R. § 353.106(c).

USERRA also protects service members from discrimination by employers because of their military service. *See* 38 U.S.C. § 4311(a). This Court analyzes USERRA discrimination claims under a burden-shifting framework. *See Sheehan v. Dep't of the Navy*, 240 F.3d 1009, 1013 (Fed. Cir. 2001). Under this framework, an employee must demonstrate, by a preponderance of the evidence, that the service member's military service was a substantial or motivating factor in the adverse employment action. Military service becomes a "motivating factor for an adverse employment action if the employer 'relied on, took into account, considered, or conditioned its decision, on the employee's military-related absence or obligation." *Erickson v. U.S. Postal Serv.,* 571 F.3d 1364, 1368 (Fed. Cir. 2009) (quoting *Petty v. Metro. Gov't of Nashville-Davidson Cty.*, 538 F.3d 431, 446 (6th Cir. 2008)).

## III.  <u>Background</u>

Mr. Knox was hired as a Special Agent, GS-7-1811 Criminal Investigator with the Drug Enforcement Administration (DEA) in October 1997. Appx2, Appx1262. In February 1999, Mr. Knox was promoted to a GS-9 level.

3

Appx1262.  In February 2000, Mr. Knox was promoted to a GS-11 level.  *Id.*  On

February 25, 2001, Mr. Knox was promoted to a GS-12 level.  *Id.*, Appx7.

Mr. Knox also served as an enlisted member of the United States Air Force

Reserves.  Appx2, Appx1262.  From November 22, 2002 through November 21,

2003, Mr. Knox deployed for military service.  Appx169, Appx250, Appx1316.

At the time of his deployment, Mr. Knox was a GS-12, step 2 employee.  Appx7-8.

As of February 23, 2003, while he was deployed, Mr. Knox became entitled

to receive an automatic within-grade-increase (WGI).  *See* Pet. Br. at 4; Appx99-

100, Appx767.  The WGI was not granted until April 20, 2003.  Appx102,

Appx769-70.  Mr. Knox returned to the DEA as a GS-12, step 3 on November 24,

2003.  Appx1263.

On March 10, 2004, Mr. Knox submitted a promotion request, notifying his

Group Supervisor that he would "be eligible for promotion to a GS13 on

04/20/04."  Appx216, Appx8.  Mr. Knox's Group Supervisor, Lori Cassity,

advised Mr. Knox to submit his promotion package in April 2004 because she

mistakenly believed Mr. Knox was not eligible for promotion until April.  Appx16.

At the time of Mr. Knox's promotion request in March 2004, the DEA's

Personnel Manual provided two methods of promotion from GS-12 to GS-13.

Appx1263.  GS-12 Special Agents were eligible to be considered for promotion to

GS-13 after one year in grade if they were recommended by the Special Agent in

4

Charge (SAC) based on certain criteria.  Appx6, Appx1263-64.  GS-12 Special

Agents were also eligible to be considered for promotion to GS-13 after three or

more years at GS-12 based on the SAC's personal recommendation, provided they

met certain criteria including an excellent performance rating, were certified by the

SAC to be capable of performance at the GS-13 level, and had not been subject to

any disciplinary action.  Appx6, Appx1263.  Neither promotion was automatic.

Appx6, Appx1263-1264.

On April 1, 2004, Ms. Cassity recommended Mr. Knox for promotion to

GS-13 based on the three-year discretionary promotion method.  Appx217-218,

Appx12, Appx1263.  The Group Supervisor recommended that the appellant be

promoted to GS-13 as of "April 20, 2004, his date of eligibility."  Appx218,

Appx8.

DEA exercised its discretion and did not approve Mr. Knox's approval to

GS-13 in 2004.  Appx221, Appx1264.  Several individuals, including Mr. Knox's,

GS-13 promotion packages were returned pending new instructions.  Appx221.

On June 15, 2004, DEA subsequently changed its promotion policy with

regards to promoting GS-1811-12 Special Agents, including Mr. Knox.  Appx254-

261, Appx1264.  DEA eliminated the three-year time-in-grade requirement.

Appx254, Appx1264.  Instead, GS-12 Special Agents would become eligible for

promotion after one year, provided they demonstrated the capacity to perform at a

GS-13 level based on established criteria.  Appx255, Appx7, Appx1264.  Again,

promotions under the revised promotion policy were not automatic.  App254

("*[S]uch promotions are neither an entitlement nor automatic.*") (emphasis in

original), Appx1264.

Mr. Knox was eventually promoted to GS-13 in April 2016.  Appx252.  He

subsequently retired on December 31, 2020.  Appx1315, Appx1319.  There is no

evidence that suggests Mr. Knox applied for promotion between 2004 and 2016.

Appx1345 (Appellant's Response to Agency's Closing Brief) (indicating that

"Appellant's later applications for promotion under the revised policy effective

June 15, 2004, *or lack of such applications*, is irrelevant to his pending claim")

(emphasis added).

## IV.    **Mr. Knox's MSPB Appeal**

On January 3, 2020, more than 17 years after the events at issue, Mr. Knox

appealed directly to the board, alleging violations of USERRA.  Appx1, Appx169-

171; Pet. Br. at 4.  More specifically, Mr. Knox's appeal sought to have his WGI

retroactively corrected to February 23, 2003, and his GS-13 promotion

retroactively corrected to February 2004.  Appx2.  Mr. Knox withdrew his request

for a hearing before the board's administrative judge, and the parties submitted

close-of-record submissions.  Appx1.

While the case was pending before the MSPB, the board issued orders

setting forth various procedures, including timing and meet and confer

requirements for filing motions to compel and the deadline to notice depositions.

Appx318; *see* Appx422.  Mr. Knox filed a motion to compel based on DEA's

alleged discovery deficiencies, Appx320, Appx433 (motion to vacate order

denying motion to compel), but failed to comply with the requisite procedures or

meaningfully meet and confer prior to filing the motion.  Appx422, Appx446-448.

Both the motion to compel and motion to vacate were therefore denied.  Appx422-

23, Appx445, Appx606-610 (summarizing same)[1].

The parties also filed a series of motions seeking to suspend the case in order

to pursue additional discovery and/or alleged delays stemming from COVID-19.

Appx450, Appx459, Appx474.  The motions were denied because the discovery

deadlines requested to be extended had already lapsed at the time the motions were

filed.  Appx456, Appx467-68.  As such, the administrative judge determined that

the parties had failed to show good cause and the discovery deadlines were not

immediately impacted due to COVID-19.  Appx456, Appx467-68, Appx492-94,

*see* Appx615-16 (summarizing same).  The administrative judge also addressed

depositions that the parties alleged had been timely noticed, but determined that

they were not properly noticed because the notices failed to specify a date, time, or

---

[1] The Court granted a separate motion to compel filed by Mr. Knox.  Appx620-622.

location for the depositions.  Appx492-94, *see* Appx618-19 (summarizing same).

A prehearing conference was held on May 17, 2022.  Appx1222-1229.
During the conference, the administrative judge addressed DEA's laches defense.
Appx1222-1224, Appx1234-35.  Mr. Knox subsequently filed "objections" to the
conference, expressing "concern[] that he was directly questioned by the
Administrative Judge on the merits of the claim and its evidentiary support," and
indicating that he "did not understand the need to address substantive issues on
what was simply a procedural status call."  Appx1237-1238.  The objections
contained allusions of bias.  Appx1237 ("While this may not have been the
Administrative Judge's intention, it certainly struck counsel and the Appellant as
inappropriate and suggestive of a point of view."), Appx1238 ("[Appellant]
remains concerned that the Administrative Judge signaled to the Agency where
they should focus their defense, while shifting the obligation on the affirmative
defense to one the Appellant must disprove, rather than the Agency prove.").  The
judge responded in a written order, denying any bias.  Appx1254-1256.

The board's administrative judge issued an initial decision on September 21,
2022.  Appx1-28.  The board first rejected the DEA's laches defense.  The board
explained that Mr. Knox's 17-year delay in filing his appeal was "inexcusable,"
but that DEA had not shown prejudice.  Appx9.  The judge determined that the
current case was a "relatively straightforward case about dates relative to eligibility

for WGIs and promotions" and that the agency had provided the relevant portions of Mr. Knox's personnel file and promotion policies in effect at the relevant times. Appx9-10. Because DEA had not demonstrated that it had "[l]ost critical evidence due to the passage of time," the DEA had failed to prove prejudice, thus precluding a finding of laches. Appx10.

DEA conceded, and the board ultimately granted, that Mr. Knox was entitled to receive an automatic WGI on February 23, 2003.[2] Appx10, Appx1297. The board cited DEA's admission that "under the escalator principle of USERRA, SA Knox should have received his within-grade step increase to GS-12 Step 3 without delay in February 2003." Appx10 (quoting Appx405 at Request for Admission 8).

The board also determined that DEA's admission was consistent with USERRA. Appx10-11. Treating Mr. Knox's appeal of his WGI as a reemployment claim, the board explained that no showing of discriminatory intent was required. Appx11. Instead, "it is sufficient for [Mr. Knox] to show, as he did here, that he was entitled to a benefit of employment and did not receive it." *Id.*

However, the board rejected Mr. Knox's discrimination claim. The board determined that while Mr. Knox had demonstrated that he was denied an employment benefit (the WGI increase as of February), "he did not show by

---

[2] As a result, the board directed the DEA to provide Mr. Knox with the appropriate amount of back pay that would have been paid had Mr. Knox received his WGI on February 23, 2003. Appx17. That award is not at issue in this appeal.

9

preponderant evidence that his membership in the uniformed services was a substantial or motivating factor in the delay of his WGI." Appx11. The board concluded that neither party had provided evidence concerning "why the WGI was delayed," and there was no "apparent link between the appellant's uniformed service and the delay he experienced." *Id.* The board explained that DEA had not "failed to process the WGI at all and made him wait for the year, as might be expected if the agency were not counting as creditable service the time [Mr. Knox] was deployed, or delayed it based on some other amount of time clearly related to his uniformed service." Appx11. In sum, Mr. Knox had "not shown that it is more likely than not that the delay was based on discrimination for uniformed service as opposed to random administrative error." Appx11-12.

The board then turned to Mr. Knox's claim that he was entitled to a promotion as of February 2004. While the board agreed that Mr. Knox "was *eligible* for promotion to GS-13 as of [February 2004, h]owever, unlike a WGI, which is generally automatic, eligibility for promotion does *not* equate to entitlement for promotion." Appx12 (emphasis in original). The judge relied upon the fact that the promotion policy in place at the time "explicitly provided that no promotion would be automatic." *Id.* (citing Appx292). Therefore, Mr. Knox "cannot show that it was a right of employment to which he otherwise would have been entitled under 38 U.S.C. § 4316." Appx13.

The board then addressed Mr. Knox's argument "that if his GS-13 promotion packet had been submitted in February 2004, it [was] *reasonably certain* that he would have received the promotion" based on agency reports demonstrating that the  majority of GS-13 promotion requests had been approved in the years preceding 2004 and the promotion of his colleague.  Appx14-15.  The board found that Mr. Knox was not entitled to promotion, finding that it was "instead a discretionary promotion based on an incumbent's position," Appx13.  Therefore, Mr. Knox could not establish that it was reasonably certain he would have obtained the promotion.

The board next turned to Mr. Knox's discrimination claim, first examining whether Mr. Knox had demonstrated that his uniformed service was a motivating factor in the DEA's determination not to promote him.  The board noted that DEA "did not rebut the appellant's declaration that [Mr. Knox's Group Supervisor] told him to wait until he had completed a year in the GS-12 step 3 level, and that she mistakenly believed he was eligible for promotion consideration as of April 2004."  Appx16.  But again, the board concluded that Mr. Knox had failed to establish that the delayed WGI was more than a mistake, explaining that there was "no evidence that uniformed service played a role (let alone a substantial or motivating role) in causing that mistake, or in causing any follow-on consequences of that mistake, such as delaying the GS-13 promotion package to April 2004."  Appx16.

11

The board further noted that even if Mr. Knox had established that his military service had been a motivating factor for the delayed promotion, that DEA's laches argument would have merit.  Appx16, n.2.  If Mr. Knox had established his military service as a motivating factor, the burden would have shifted to DEA to demonstrate that Mr. Knox would not have been promoted notwithstanding his military service.  *Id.*  The board found that would have required DEA to provide evidence such as "the recollection of personnel involved in processing [promotion] packages," and that the passage of 17 years would have negatively "impacte[d] the agency's ability to identify appropriate witnesses and then deal with attendant issues of faded memories."  Appx16, n.2.

No party petitioned for full board review of the initial decision, and thus it became the board's final decision.  On November 18, 2022, Mr. Knox filed an appeal with this Court.  *See* Docketing Notice, ECF No. 1.

## SUMMARY OF THE ARGUMENT

The Court should affirm the board's decision.  In order to prevail on his USERRA claim, Mr. Knox was required to establish that: 1) it would have been reasonably certain that he would have been promoted in February 2004 and that promotion to GS-13 was a right of employment; or 2) that Mr. Knox's military service was a motivating factor in DEA's determination to deny his promotion. Mr. Knox has failed to show either and thus his claim fails.

*First,* substantial evidence supports the board's conclusion that Mr. Knox was not reasonably certain to receive a promotion in February 2004. There is a far cry between becoming *eligible* for promotion and such promotion being reasonably certain. As the board explained, Mr. Knox's eligibility for promotion to GS-13 in February 2004 did not equate to a reasonable certainty that he would be promoted. Appx12. Indeed, Mr. Knox admits that promotion for GS-12 to GS-13 was neither automatic, nor always granted. Pet. Br. at 28 ("[Mr.] Knox does not dispute there was a discretionary element to the promotion to a GS-13 position."); *see* Appx6, Appx1107, Appx114, Appx1114.

Further, Mr. Knox's reliance on DEA promotion rates for other special agents and the anecdotal promotion of a colleague from a separate division are misplaced. As the board correctly identified, there is no indication concerning when the colleague submitted his promotion request, only that he was promoted in March 2004. Appx12. Further, DEA's promotion rates only underline that certain individuals were not promoted. This evidence does not undermine the board's conclusions.

*Second,* the board's determination that the GS-13 promotion was not a "right of employment" was supported by substantial evidence. Appx13. A promotion to GS-13 is not a benefit generally granted to all DEA employees. *See* 5 C.F.R. § 305.106(c)(1). Rather, it is a discretionary measure that depends on the

13

performance of each individual employee. The board's determination that Mr. Knox's GS-13 promotion was not a right of employment "generally granted to all employees" is supported by substantial evidence.

*Third,* substantial evidence supports the board's finding that Mr. Knox's military service was not a motivating factor in DEA's determination not to promote him. As the board explained, there is no "apparent link between the appellant's uniformed service and the delay he experienced." Appx11. Indeed, the only evidence cited by Mr. Knox to support his argument, email correspondence concerning his non-pay status, is dated after he had already received the WGI. This singular piece of evidence is insufficient to show that the board's decision lacked substantial evidence. Rather, the record evidence supports the board's determination that the delayed WGI was attributable to administrative error, not Mr. Knox's military service.

*Fourth,* Mr. Knox's arguments concerning the administrative judge's discovery and procedural rulings fail to articulate any error, let alone provide any reason to depart from the Court's policy to avoid intervening in the "sound discretion of the board and its officials." *Curtin v. OPM*, 846 F.2d 1373, 1378-80 (Fed. Cir. 1988). Mr. Knox simply failed to abide by the judge's procedures. Mr. Knox also fails to articulate precisely how he was prejudiced by these alleged abuses of discretion.

*Finally*, the record belies Mr. Knox's claim that DEA abandoned its laches defense. The record demonstrates that DEA maintained its laches defense throughout the litigation. Further, even if Mr. Knox were correct, he has not demonstrated any harmful error. Indeed, the board determined that Mr. Knox's appeal was not barred by laches, and granted Mr. Knox relief on one of his two claims. Appx2, Appx9-10.

## ARGUMENT

### I.    The Court's Review Of The MSPB Decision Is Limited

The scope of judicial review of decisions of the MSPB is defined narrowly and limited by statute. *E.g., Graybill v. U.S. Postal Serv.*, 782 F.2d 1567, 1570 (Fed. Cir. 1986); *see Maddox v. MSPB*, 759 F.2d 9, 10 (Fed. Cir. 1985). An MSPB decision must be affirmed unless it is found to be: arbitrary or capricious or not in accordance with law; obtained without procedures required by law, rule, or regulation having been followed; or unsupported by substantial evidence. 5 U.S.C. § 7703(c)(1)-(3); *Hayes v. Dep't of the Navy*, 727 F.2d 1535, 1537 (Fed. Cir. 1984). Substantial evidence is a lower standard of proof than preponderance of the evidence. *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court does not substitute its judgment for that of the MSPB as to the weight of the evidence or the inferences to be drawn. *E.g., Cross v. Dep't of Transp.*, 127 F.3d 1443, 1448

15

(Fed. Cir. 1997).  The burden of establishing reversible error rests upon Mr. Knox.

*Harris v. Dep't of Veterans Affairs*, 142 F.3d 1463, 1467 (Fed. Cir. 1998).

## II.    Substantial Evidence Supports The Board's Determination That Mr. Knox Was Not Reasonably Certain To Have Been Promoted In February 2004

In order to prevail on his USERRA reemployment claim, Mr. Knox was

required to demonstrate that it was reasonably certain that he would have been

promoted but for his absence for military service.  5 C.F.R. § 353.106(c)(3).  The

board's determination that it was not reasonably certain that Mr. Knox would have

been promoted was lawful and supported by substantial evidence.

USERRA does not entitle a veteran to a promotion which involves the

"'fitness and ability and the exercise of a discriminating managerial choice.'"

*Tilton v. Mo. Pac. R.R. Co.,* 376 U.S.169, 179 (1964) (interpreting predecessor

statute to USERRA (quoting *McKinney v. Mo. Kan.-Tex. R.R. Co.*, 357 U.S. 265

(1958)).  Here, the agency's policy provided that promotion to GS-13 was

discretionary, and there was no guarantee or entitlement to the position.

This Court has rejected that a potential discretionary promotion should be

considered "reasonably certain."  *See, e.g., Hayden v. Dep't of the Air Force*, 812

F.3d 1351, 1362 (Fed. Cir. 2016); *see also Eby v. United States*, 823 F. App'x 933,

936 (Fed. Cir. 2020) (evaluating "reasonable certainty" of promotion in the context

of expectation damages and concluding that "potential discretionary promotions

that are subject to a competitive process cannot provide the requisite reasonable certainty necessary to prove expectation damages"). This Court's analysis in *Hayden* is instructive. In *Hayden*, the petitioner contended that evidence including testimony that only ten position upgrade requests out of hundreds had not been granted, his outstanding performance reviews, prior position upgrades, and the fact that the petitioner was already performing GS-12 duties demonstrated that a position upgrade from GS-11 to GS-12 was "reasonably certain." 812 F.3d at 1362. Mr. Hayden also pointed to another individual in his office that had received the position upgrade, but had not served in the military. The board determined that Mr. Hayden had not met his burden to demonstrate that he was reasonably certain to have been promoted. *Id.* This Court affirmed the board's decision with respect to Mr. Hayden's reemployment claim, declining the "invitation to reweigh the facts on appeal," and explaining that the board's determination was supported by substantial evidence. *Id.*

Similarly, Mr. Knox's reliance on DEA's promotion records and the promotion of an anecdotal colleague do not undermine the board's conclusion. As the board explained, the timing of Mr. Knox's colleague's promotion was uncertain. Appx12. Further, the colleague identified by Mr. Knox was from a separate division. *Compare* Appx1163 (indicating that individual was part of Phoenix, AZ division) *with* Appx1145 (indicating that Mr. Knox was part of

Seattle, WA division).  In *Eby*, this Court rejected similar arguments regarding

promotion of other FDA employees in the context of assessing expectation

damages.  823 F. App'x at 936.  The appellant, citing statistics showing that 80%

of FDA employees had been promoted from GS-13 to GS-14 within two years of

being hired, argued that this demonstrated it was "reasonably certain" that he

would have been promoted.  *Id.* at 936.  This Court disagreed, explaining that

"these examples show that there may have been a good chance that [appellant]

would be promoted, but they do not satisfy the reasonable certainty standard we

must employ."  *Id.*; *see Hayden*, 812 F.3d at 1362 (rejecting similar arguments).

While *Eby* is not a USERRA case, its discussion of the "reasonably certain"

standard with regards to promotions is instructive here.

Furthermore, while Mr. Knox presents statistics concerning promotion for

GS-12 to GS-13 based on 3 years in grade, *see* Pet. Br. at 10, a more holistic

evaluation that includes those individuals recommended for promotion after 1 year

in grade shows that a smaller percentage of 1811 Special Agents were ultimately

promoted:

| Total Percentage of GS1811 Special Agents Promoted to GS-13 By Year | |
|---|---|
| Year | Percentage |
| 1996 | 91% |
| 1997 | 96% |
| 1998 | 90% |
| 2001 | 77% |
| 2002 | 89% |
| 2003 | 93% |

Appx689-90, Appx894.

Notably, the record does not contain DEA promotion rates in 2004. Mr. Knox admits that DEA's promotion policies were undergoing changes that reduced the likelihood of promotion in 2004. *See* Pet. Br. at 10; Appx1278, Appx1294. Mr. Knox argues that DEA was still processing GS-13 promotions as of February 2004, but cites no evidence to support this claim.

Moreover, Mr. Knox cites his supervisors' approval of his promotion in April 2004 as evidence that he certainly would have received the promotion in February 2004. Pet. Br. at 20; *id.* at 28. At the outset, it is unclear whether he ever obtained ASAC or SAC approval for his promotion request. Mr. Knox cites a declaration which references a recommendation memo that is being routed through his ASAC to the SAC. *See* Pet. Br. at 28 (citing Appx1316 (declaration)); Appx104-105 (recommendation memorandum). This memorandum does not

appear to contain any recommendation by either the ASAC or SAC. *Id.* Furthermore, the evidence shows that the SAC never ultimately approved the promotion package. Appx107-108 (indicating that promotion package is in holding, pending SAC approval). However, even if this evidence constitutes approval, the ASAC and SAC approvals were not even alleged to have been obtained until April and June 2004, respectively. There is no evidence in the record that shows it is more likely than not that his supervisors would have recommended Mr. Knox for promotion two months earlier. Indeed, Mr. Knox's second-line supervisor declined to endorse and forward Mr. Knox's promotion when she received his initial promotion request in March 2004. Appx1317, Appx1293. Mr. Knox's conclusory statements to the contrary are not enough to establish that he would have received their recommendation 2-4 months earlier.

Finally, Mr. Knox's arguments rely on an attenuated causal chain that introduces considerable uncertainty. Mr. Knox's proposed chain of causality, *i.e.*, that had his WGI not been delayed, that he would have been recommended for promotion earlier, that his promotion would be timely processed, and that he would therefore be promoted prior to any changes to the DEA's promotion policies. However, the record evidence suggests that there was considerable uncertainty regarding the timing of each step. For example, as discussed above, Mr. Knox's second line supervisor was not willing to recommend Mr. Knox for promotion

when first approached in March.  *See* Appx1317.  Thus, it was far from a

reasonable certainty that Mr. Knox's second line supervisor would be willing to

recommend Mr. Knox for promotion a month earlier.  Furthermore, Mr. Knox's

promotion request was further delayed at least three weeks while pending review

by his third-line supervisor.  Appx220.  Finally, Mr. Knox's promotion

encountered another lengthy delay while pending review at headquarters.

Appx221.  Thus, even if Mr. Knox were correct that his promotion should have

been recommended in February 2004, it is far from a reasonable certainty that the

process would have been completed prior to the change in DEA's GS-13

promotion policies.  Given the considerable uncertainty inherent in Mr. Knox's

argument, the board's determination that Mr. Knox had not shown that he was

reasonably certain to have been promoted was lawful and supported by substantial

evidence.

### III.  Substantial Evidence Supports The Board's Determination That <u>Promotion To GS-13 Was Not Generally Granted To All Employees</u>

The board correctly determined that Mr. Knox's GS-13 promotion was not a

right of employment under 38 U.S.C. § 4316.  Section 4316(a) provides that a

service member reemployed under 38 U.S.C. §§ 4301 et. seq. is entitled to the

seniority and rights and benefits that the individual had when they commenced

uniformed service and would have attained had they remained continuously

employed.  *Id.*  However, that individual is not entitled to any benefits the person

would not have been entitled to had they remained continuously employed. 38

U.S.C. § 4316(b)(4). Promotion to a higher GS-level position is not a "generally

granted" incident or advantage to all employees. *See* 5 C.F.R. § 353.106; *Hayden*,

812 F.3d at 1362 (affirming board's finding that promotion upgrade from GS-11 to

GS-12 was not an incident or advantage generally granted to all employees);

*Hawkins v. DOJ*, DE-4324-15-0507-B-1, 2016 MSPB LEXIS 6920, *8 (M.S.P.B.

Nov. 30, 2016) (finding promotion from GS-7 to GS-8 was not a benefit generally

granted to all employees). As the MSPB correctly noted here, the GS-13

promotion was not something to which Mr. Knox was entitled, such as a "career

ladder promotion." Appx12-13. It was not "automatic", rather it was a

discretionary promotion. *Id.* As such, the board's finding that Mr. Knox failed to

demonstrate that promotion to GS-13 was a right of employment was lawful and

supported by substantial evidence.

## IV. Substantial Evidence Supports The MSPB's Determination That Mr. Knox's Military Service Was Not A Motivating Factor

For discrimination claims under USERRA, a two-step analysis occurs. 38

U.S.C. § 4311(a); *see Sheehan*, 240 F.3d at 1013. First, the appellant bears the

initial burden by showing by preponderant evidence that his military service was a

motivating factor in the agency's adverse employment action. *Id.* at 1013. If the

appellant meets their burden, the burden shifts to the employer, who must show by

a preponderance of the evidence that the employer would have taken the adverse

action anyway. *Id.* Here, substantial evidence supports the board's conclusion that Mr. Knox failed to meet his burden to show that his military service was a motivating factor in DEA's determination not to promote him.

The board determined that neither party had established why Mr. Knox's WGI was delayed. As the administrative judge explained, there was no "apparent link between the appellant's uniformed service and the delay he experienced." Appx11  The board explained that DEA had not "failed to process the WGI at all and made him wait for the year, as might be expected if the agency were not counting as creditable service the time [Mr. Knox] was deployed, or delayed it based on some other amount of time clearly related to his uniformed service." *Id*. Thus, the board concluded that there was "no evidence that uniformed service played a role (let alone a substantial or motivating role) in causing that mistake, or in causing any follow-on consequences of that mistake, such as delaying the GS-13 promotion package to April 2004." Appx16. As such, the board's conclusion that Mr. Knox had not met his burden is supported by substantial evidence.

Mr. Knox did not establish that DEA "relied on, took into account, [or] considered" his military service when it failed to promote him. *Erickson*, 571 F.3d at 1368 (Fed. Cir. 2009) (cleaned up). Mr. Knox relies on email correspondence concerning his non-pay status as evidence "that there was confusion caused by [Mr.] Knox's leave status due to his military service, and the delay in providing his

23

WGI was directly because of this confusion." *See* Pet. Br. at 26; *id.* at 19, n. 3 (citing Appx1036). At the outset, this Court is not permitted to reweigh the evidence. *Jones v. Dep't of Health & Hum. Servs.*, 834 F.3d 1361, 1369 (Fed. Cir. 2016). Nevertheless, this email between two human resource personnel is not the smoking gun that Mr. Knox purports it to be and does not support Mr. Knox's argument. The correspondence cannot provide evidence that Mr. Knox's military service was the reason why his WGI was delayed *because Mr. Knox had already received his WGI when this correspondence occurred*. Appx1036. The emails were sent in May, weeks after Mr. Knox had already received his WGI. *Compare* Appx102, Appx769-70 (showing that WGI occurred on April 20, 2003) *with* Appx1036 (correspondence dated May 13, 2003). Furthermore, the HR personnel were not decision makers and had no authority to grant or reject Mr. Knox's WGI. Thus, the emails relied upon by Mr. Knox cannot serve as evidence that his military service was the reason why his WGI was delayed from February to April, and the board did not err by failing to grant the emails more weight. If anything, the emails relied upon by Mr. Knox only provide further support for the board's determination that the WGI delay was the result of an administrative error. And Mr. Knox provides no other evidence or record citation to support his claim that his military service was the reason his WGI was delayed. Without more, Mr. Knox is not able to meet his burden to show that his military service was the reason for

24

the delay, as the board properly concluded. *See In re Jolley*, 308 F.3d 1317, 1329 (Fed. Cir. 2002) ("[W]here two different, inconsistent conclusions may reasonably be drawn from the evidence in record, an agency's decision to favor one conclusion over the other is the epitome of a decision that must be sustained upon review for substantial evidence.").

Substantial evidence supports the board's finding that Mr. Knox's WGI was delayed due to an administrative error, and not his military service. Appx11-12, Appx16. Mr. Knox's Group Supervisor signed off on the WGI on December 20, 2002, while Mr. Knox was deployed. Appx213. The approval indicates that the effective date for the WGI is February 23, 2002. In other words, Mr. Knox's supervisor approved Mr. Knox's WGI with the correct effective date, *while Mr. Knox was deployed*. Thus, the board concluded that Mr. Knox's delayed WGI was attributable to administrative error rather than Mr. Knox's military service.

Indeed, the only other record evidence suggests that Mr. Knox's own promotion request may have contributed to the confusion. *See* Appx8. Mr. Knox's March 10, 2004 promotion request indicated to his Group Supervisor that he would "be eligible for promotion to a GS13 on 04/20/04." Appx216, Appx8. In turn, Mr. Knox's Group Supervisor used that date when recommending Mr. Knox for promotion. *See* Appx218, Appx16. Thus, substantial evidence supports the board's conclusion that the cause of the delay was an administrative mistake,

25

not Mr. Knox's military service.[3]

## V.    The Administrative Judge's Discovery Rulings Are Not An Abuse Of Discretion

Mr. Knox next argues that the administrative judge abused his discretion when he issued multiple discovery rulings.  Pet. Br. at 30-49.  Mr. Knox has provided no reason for this Court to intervene in the "sound discretion of the board and its officials."  *Curtin v. OPM*, 846 F.2dat 1378-80.

Importantly, Mr. Knox fails to articulate precisely how he was prejudiced by these discovery rulings, as he is required to do in order to show reversible error. *Graves v. Dep't of the Navy*, 451 F. Appx. 931, 933 (Fed. Cir. 2011) ("If an abuse of discretion did occur with respect to the discovery and evidentiary rulings, in order for petitioner to prevail on these issues he must prove that the error caused substantial harm or prejudice to his rights which could have affected the outcome of this case.") (cleaned up); *see* Pet. Br. at 34.  While Mr. Knox argues that the totality of the rulings caused the board to decide this case on an "incomplete

---

[3] In the alternative, the board also correctly recognized that DEA's laches defense would be cognizable.  The board found that DEA would be prejudiced if forced to rebut Mr. Knox's discrimination argument.  Even assuming *arguendo*, that Mr. Knox could establish that DEA's determination not to promote him was motivated by his military service, the burden would shift to the agency to show that it would not have promoted him without considering his military service.  *Sheehan*, 240 F.3d at 1013.  But as the board correctly concluded, the proceeding 17 years would have prejudiced the agency's ability to make such a showing.  *See* Appx16, n.2.

factual record," Pet. Br. at 48, he fails to identify the precise evidence that should have been included.  Moreover, the administrative judge's rulings did not deprive Mr. Knox the ability to create a record.  For example, there was no order preventing Mr. Knox from noticing remote depositions during the pandemic.  As we explain below, none of Mr. Knox's arguments show that the administrative judge abused their discretion, requiring reversal.

### A. The Administrative Judge Did Not Abuse His Discretion By Dismissing Mr. Knox's Motion To Compel For Failing To Comply With The Meet And Confer Requirement

Mr. Knox first complains that the administrative judge abused his discretion by enforcing a meet and confer requirement prior to filing a motion to compel. There is no dispute that Mr. Knox did not engage in a telephonic or in-person meet and confer prior to filing his motion to compel.  Pet. Br. at 40-41, Appx422-424, Appx445-449.  Thus, the administrative judge properly denied Mr. Knox's motions. *See McCarthy v. Int'l Boundary & Water Comm'n*, 497 F. App'x 4, 14-15 (Fed. Cir. 2012) (affirming denial of motion to compel based, in part, on appellant's failure to "meaningfully" comply with telephonic or in-person meet and confer requirement).

Furthermore, Mr. Knox was not prejudiced by the denial of his motions to compel.  This case continued for years after the motion to compel was denied for failure to participate in the requisite meet and confer, affording more than adequate

time for Mr. Knox to pursue further discovery or to file another motion[4] after

participating in the requisite meet-and-confer.

### B. The Administrative Judge Did Not Abuse His Discretion By Failing To Suspend The Case

Mr. Knox also takes issue with the fact that the administrative judge rejected

the parties' motions to suspend the case.  Pet. Br. at 42-44.  The power to issue a

stay in most cases arises under a tribunal's "broad discretionary powers to control

their dockets."  *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1341 (Fed. Cir.

1983).  Here, Mr. Knox has not shown that the administrative judge abused his

discretion by declining to stay the appeal.  He cites no support for his contention

that the board was required to suspend the case.  Indeed, the regulation cited by

Mr. Knox only indicates that "[t]he judge may issue an order suspending the

processing of an appeal for up to 30 days."  5 C.F.R. § 1201.28 (emphasis added).

The administrative judge was within his discretion to decline to do so.  This is

particularly true here, where the parties' discovery deadlines had already lapsed at

the time they had filed the motions to suspend the case.  Appx606-620.

---

[4] Indeed, Mr. Knox filed a motion to compel other discovery, which was
granted. Appx620-622.

**C.    The Administrative Judge Did Not Abuse His Discretion By Addressing Substantive Matter During The Prehearing Conference**

Mr. Knox asserts that the administrative judge abused his discretion by addressing DEA's laches defense and certain documents during the parties' prehearing conference call.  This argument is meritless.  Indeed a "prehearing conference call" is not normally limited to scheduling matters.  Nor does the order setting the conference call indicate that it "was [scheduled] merely to discuss the briefing dates."  *See* Pet. Br. at 44 (citing Appx669).  In any event, Mr. Knox fails to demonstrate how counsel being asked substantive questions during the prehearing conference amounted to prejudice.

**VI.    DEA Did Not Abandon Its Laches Defense**

At the outset,  Mr. Knox's argument is largely moot. The board determined that DEA was not prejudiced and thus rejected its laches argument.  Appx9-10. The board accepted DEA's laches argument only in the alternative that Mr. Knox had established that his military service was a motivating factor for DEA's determination not to promote him.  Appx16, n.2.

Mr. Knox's argument that DEA abandoned its laches defense is also without merit.  Indeed, Mr. Knox candidly admits that the laches defense was an issue throughout the litigation.  Mr. Knox admits that DEA includes its laches defense in its initial Narrative Response to the appeal.  Pet. Br. at 39-40 (citing Appx373,

Appx192-196). Mr. Knox sought discovery regarding DEA's laches defense.

DEA sought to dismiss the case based, in part, on its laches defense. *See* Appx317.

Mr. Knox also admits that DEA's laches defense was raised during the parties'

prehearing conference. Pet. Br. at 44; Appx1222-1223. DEA's closing brief

included its laches defense, *see* Appx1261, Appx1265-1267, and Mr. Knox's

closing brief responded accordingly. Appx1311-1315. Thus, Mr. Knox's

argument that DEA abandoned its laches defense is belied by the record.

## **CONCLUSION**

For these reasons, the Court should affirm the MSPB's decision.

Respectfully submitted,

BRIAN M. BOYNTON
Principle Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

*/s/ Tara K. Hogan*
TARA K. HOGAN
Assistant Director

/s/ Stephen J. Smith
STEPHEN J. SMITH
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Washington, DC 20044
Tel: (202) 353-0546
Stephen.J.Smith@usdoj.gov

October 12, 2023                    Attorneys for Defendant

<u>CERTIFICATE OF COMPLIANCE</u>

I certify that this brief complies with the type-volume limitations set forth in Fed. R. App. P. 32(a)(7)(B). In making this certification, I have relied upon the word count function of the word-processing system used to prepare this brief. According to the word count, this brief contains 6,702 words.


October 12, 2023                    */s/ Stephen J. Smith*

                                   STEPHEN J. SMITH