**2023-1160**

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

ANTHONY W. KNOX,
*Petitioner*,

v.

DEPARTMENT OF JUSTICE,
*Respondent*.

Petition for Review of the Merit Systems Protection Board in
No. SF-4324-20-0191-I-3
Administrative Judge Franklin M. Kang

REPLY BRIEF OF PETITIONER
ANTHONY KNOX

Kevin E. Byrnes, Esq.
Grace H. Williams, Esq.
Fluet
1751 Pinnacle Drive, Suite 1000
Tysons, VA 22102
Telephone: (703) 590-1234
*Counsel for Petitioner*

November 20, 2023

# CERTIFICATE OF INTEREST

Counsel for Petitioner Anthony Knox certifies the following:

1. The full name of every party or amicus represented by me is:

Anthony Knox

2. The name of the real party in interest represented by me is:

Anthony Knox

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party represented by me are:

Not applicable.

4. The names of all law firms and the partners or associates that appeared for the party now represented by me in the trial court or agency or are expected to appear in this Court are:

Fluet & Associates, PLLC (d/b/a Fluet)
Kevin E. Byrnes, Partner
Grace H. Williams, Senior Associate

5. The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. See Fed. Cir. R. 47. 4(a)(5) and 47.5(b).

None.

6. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

None.

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST .............................................................. ii

TABLE OF CONTENTS ...................................................................... iii

TABLE OF AUTHORITIES ................................................................ iv

APPELLANT'S OBJECTION TO APPELLEE'S STATEMENT OF THE ISSUES ........................................................................................... vi

REPLY ARGUMENT .......................................................................... 1

    I.   Knox's Promotion Denial was due to Military Service in violation of USERRA. .................................................................................... 1

    II.   The AJ's Decisions Limiting Discovery were an abuse of discretion which prejudiced Knox. ......................................................................... 12

    III.   Knox's Established Reasonable Certainty for GS-13 Promotion. ............. 14

    IV.   Knox met his burden to demonstrate his promotion was reasonably certain and the Board's decision and findings otherwise are not supported by substantial evidence, and are contradicted by relevant precedent. ......................... 18

    V.   Affirming the AJ's conduct in ignoring the remedial nature of USERRA undermines its purpose and principles enshrined in law. ..................... 23

CONCLUSION ................................................................................. 28

# TABLE OF AUTHORITIES

**Cases**

*Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*,
  988 F.2d 1157 (Fed. Cir. 1993) .......................................................21

*Bostwick v. Dep't of Agriculture*,
  122 M.S.P.R. 269 (2015) ...............................................................26

*Eby v. United States*,
  823 F. App'x 933 (Fed. Cir. 2020) ......................................... 19, 20

*Erickson v. Postal Serv.*,
  571 F.3d 1364 (Fed. Cir. 2009) .............................................. *passim*

*Fishgold v. Sullivan Drydock & Repair Corp.*,
  328 U.S. 275 (1946)........................................................................26

*Halstead v. Grinnan*,
  152 U.S. 412 (1894).......................................................................21

*Hayden v. Dep't of the Air Force*,
  812 F.3d 1351 (Fed. Cir. 2016) ....................................... 18, 19, 20

*Huhmann v. Fed. Express Corp.*,
  874 F.3d 1102 (9th Cir. 2017) .............................................. 18, 23

*Jenkins v. EPA*,
  118 M.S.P.R. 261 (2012) ...............................................................12

*Kiser v. Department of Education*,
  66 M.S.P.R. 372 (1995) .................................................................12

*Mangano v. Department of Veterans Affairs*,
  104 M.S.P.R. 316 (2006) ...............................................................12

*McMillan v. Department of Justice*,
  812 F.3d 1364 (Fed. Cir. 2012.......................................................12

*Mock v. City of Rome*,
  851 F.Supp.2d 428 (N.D. NY, 2012) .............................................4

iv

*Montgomery v. Southern Electric Steel Co.*,
    410 F.2d 611 (5th Cir. 1969) ........................................................26

*Petty v. Metro. Gov't of Nashville–Davidson Cty.*,
    538 F.3d 431 (6th Cir.2008) ........................................................10

*Pomrening v. United Air Lines, Inc.*,
    448 F.2d 609 (7th Cir. 1971) ......................................................27

*Sarro & Assocs., Inc. v. United States*,
    152 Fed. Cl. 44 (2021).................................................................14

*Schilz v. City of Taylor, Michigan*,
    825 F.2d 944 (6th Cir. 1987) ................................................ 26, 27

*Sheehan v. Dep't of Navy*,
    240 F.3d 1009 (Fed. Cir. 2001) ........................................... *passim*

*Tilton v. Missouri Pacific Railroad Company*,
    376 U.S. 169 (1964).....................................................................23

*White v. Government Printing Office*,
    108 M.S.P.R. 355 (2008)..............................................................13

*Whitmore v. Dep't of Labor*,
    680 F.3d 1353 (Fed. Cir. 2012) ...............................................4, 24

**Statutes**

20 C.F.R. §1002.191 ..........................................................................18
38 U.S.C. § 4311(c)(1)........................................................................12
38 U.S.C. §4301 ..........................................................................26, 27
5 C.F.R. § 353.106 .............................................................................10
5 C.F.R. §1201.73(d)(3).......................................................................13

## APPELLANT'S OBJECTION TO
## APPELLEE'S STATEMENT OF THE ISSUES

The Appellant Anthony Knox ("Appellant" or "Knox") does not concur that

the Agency Respondent ("Agency," "DEA," or "Respondent") has accurately

framed the issues in its "Statement of the Issues" on page one of its Brief. *See*

Resp. Br. at 1. Appellee re-incorporates his framing of the issues submitted in his

Opening Brief as being accurate. Pet. Br. at 3.[1]

---

[1] To avoid confusion, Appellant's Opening Brief will be referred to in short citations as "Pet. Br." and Appellee's Brief will be "Resp. Br." to distinguish more clearly between the parties.

# REPLY ARGUMENT

## I.     Knox's Promotion Denial was due to Military Service in violation of USERRA.

The Agency conceded, as it must, that SA Anthony Knox was on active duty between November 22, 2002, and November 21, 2003, and that because of this duty, his within-grade increase was delayed for two months. Appx406. *See also* Resp. Br. at 4, and *see* Appx104-105, Appx205, Appx1262.

It is also true that as of February 2004, Knox satisfied all the criteria to obtain a promotion to a GS-13 Special Agent under policies in effect as of that date. Appx406. However, the delay in his within-grade increase until April 2004, an incorrect guidance that the Agency provided about retroactive adjustment being impossible, led his supervisor to believe he was not eligible for promotion until April 2004. Resp. Br. at 4-5, Appx6, Appx1263-1264. The supervisor then approved the package, signaling that Knox met all the criteria for promotion. *Id*. In other words, under the "discretionary policy," Knox met all the requirements for the exercise of that discretion to achieve promotion.

The Agency, mirroring the tortured logic of the AJ's Initial Decision, argues that Knox should not prevail on his promotion claim because the promotion to GS-13 was not "automatic." Appx11-16. While true, it is also a legal red herring. The delay in the GS-13 promotion submission itself was attributable to the delay in obtaining the within-grade-increase ("WGI") to which the Appellant was entitled.

Appx1277-1285. Knox attempted to apply for promotion earlier in 2004, but was told to wait until April 2004 because the Agency had incorrectly calculated his eligibility for his WGI while he was deployed. Appx1316-1319. When he applied later, subsequent policy changes had raised the bar, and his GS-13 promotion was denied. *Id*. The WGI delay was due to Appellant's active-duty deployment (Appx406) which in turn delayed his promotion. Appx1316-1319. Any other justification is simply speculative sophistry.

The Agency finally conceded the WGI was improperly delayed, and "under the escalator principle of USERRA, SA Knox should have received his within-grade step increase to GS-12 Step 3 without delay in February 2003." Appx10, Appx406. But the Agency only made this concession after forcing the Appellant to litigate and brief the issue for several years. Appx1-2, Appx406. Thus, the Agency conceded that it violated USERRA in denial of the WGI. *Id*. The Board's opinion stated, "I conclude that the appellant proved he was entitled to the WGI in February 2003 (as opposed to April 2003) and GRANT corrective action." Appx2. Neither party seeks to disturb this correct determination. The AJ, who appeared to impose incalculable burdens on the Appellant alone, had to grant corrective action given the Agency's admission that the WGI delay was due to Knox's active-duty service. Appx100-104, Appx406.

Despite this concession, the AJ, inexplicably and without citing record evidence from the Agency to prove the point, simply concluded that, "the appellant did not prove he was entitled to the GS-13 promotion before he received it," and denied Knox corrective action. Appx3. This finding ignores the evidence, which clearly and convincingly supports Knox's contention his promotion was "reasonably certain" and would have occurred if his WGI had been timely processed. The AJ's strained and unarticulated evidentiary support, and apparent disregard of Knox's evidence, cannot be excused as mere "weighing" of evidence. *See* Resp. Br. 24. Rather the finding is both evidence of the abuse of discretion and supports Knox's contention that the AJ was either biased, or straining to justify his denial of relief. No record evidence established why Knox was actually denied promotion on a discretionary basis. Instead, the AJ turned the issue on its head concluding that because the Agency denied a promotion and because there was some discretion to promotions in theory, the Agency had properly exercised that discretion.

This is sheer speculation, the Agency made no effort to support its rationale for why Knox was not entitled to a promotion under the then existing policy in place in February 2004, and it ignored that his own Special Agent in Charge had supported the request. Appx406. Notably, Knox's promotion package was delayed *because his WGI was delayed.* Appx16. As the AJ stated, "The agency did not

rebut the appellant's declaration that [GS] Cassity told him to wait until he had

completed a year in the GS-12 step 3 level, and that she mistakenly believed he

was eligible for promotion consideration as of April 2004." *Id*. Had Knox been

timely provided his WGI, there is no reason to think GS Cassity would have

formed this belief. As this Court has held, "[a]ny determination by an AJ that is

based on findings made in the abstract and independent of the evidence which

fairly detracts from his or her conclusions is unreasonable and, as such, is not

supported by substantial evidence." *Whitmore v. Dep't of Labor*, 680 F.3d 1353,

1376 (Fed. Cir. 2012).

The Agency and the AJ focused on the legally irrelevant issue as to whether

Knox's GS-13 promotion was discretionary, not automatic, and not an entitlement.

Appx15. Neither the AJ nor the Agency ever identified record evidence showing

why Knox was not reasonably certain to have been promoted to GS-13 under the

policies in place during February 2004. The uncontested evidence is that the delay

in the WGI was mistakenly used as a reason to hold up the promotion submission.

Appx16, Appx1317. That delay was due to military service; thus the denial of the

promotion itself was due to the fact that Knox served. Appx406, Appx1316-1319.

Knox advanced this rational and the close temporal proximity and factual

connectivity of his military obligation with the failure to promote. *See Mock v. City

of Rome*, 851 F.Supp.2d 428 (N.D. NY, 2012) (denying summary judgment and

4

noting the contention that New York Civil Service law granted discretion over promotions not dispositive of USERRA's non-promotion claim where evidence showed that employee was amply qualified for promotion).

The Agency and the AJ ignored the evidence of causation, that the delaying the WGI, caused the delay in submitting the promotion package, which due to the change of policy, then resulted in Appellant not being promoted. Appx14-16, Appx1316-1317. In Appellant's closing briefs (Appx1277-1328, Appx1332-1348) he offered evidence that his supervisor believed he was not eligible for promotion in February, although he was. Appx1317. The only rationale for that was not performance or conduct based, but solely due to the denial of the WGI. *Id*. In the face of such evidence, the Appellant should have prevailed.

Knox clearly established that there was a reasonable certainty of promotion (the correct standard) under the February 2004 policy and need not demonstrate the GS-13 promotion would have been "automatic" or an "entitlement."[2] Appx3, Appx1316-1319, *Cf.* Resp. Br. at 6. Knox carried this burden, by preponderant evidence, by establishing his GS-13 promotion was reasonably certain, if he had

---

[2] Were the Appellant required to prove that a promotion was "automatic" then the reasonable certainty standard would have no application. An employer could escape liability for any discriminatory or retaliatory act under such a view, since despite any motive, an employee could not prevail on a failure to promote unless they were denied an absolute entitlement to promotion.

been afforded his WGI to GS-12, Step 3 in February 2003. Pet. Br. at 8-10. And

the Agency never identified any plausible record evidence to identify why it denied

Knox his promotion, for other reasons aside from his military service. Knox

supplied a declaration that when he requested promotion in March 2004, his

supervisors told him to wait until he completed 52 weeks at GS-12, Step 3.

Appx1317. Knox also stated he was threatened with discipline if he pressed the

issue. *Id*. This declaration was unrebutted by the Agency.

In February 2004, the policy was that the "DEA would automatically grant a

promotion to an agent who had served as a GS-12, Step 3 for one year, provided

they had satisfactory performance rating and no disciplinary action or investigation

pending." Appx206-207.[3] Though Knox believes he met his burden, his burden

was lighter, and his promotion reasonably certain under the earlier promotion

---

[3] As previously noted (Pet. Br. at 43), Knox's "…promotion to GS-13 was 'reasonably certain' as of February 2004, since he had met all his time in grade requirements, had outstanding performance ratings and no disciplinary history, and *was approved for promotion by his supervisory chain*." Appx1305-1306, Appx1290-1295, Appx1301-1302 (emphasis supplied). This is crucial since most non-promotion claims founder on whether the employee actually met the criteria for promotion, or the discretion of the employer can be somehow supported in making a choice between qualified candidates competing for a position. Neither of these factors are present. Indeed, 97% of similarly situated agents were promoted in the previous years under that policy. *Id*. *See also* Appx710-711.

framework and his delayed WGI prevented him from applying earlier. Pet. Br. at 43. This is also true in light of Agency's admission that, "…if the Seattle Division had submitted SA Knox's GS-13 promotion package to DEA Headquarters in February 2004, he should have been evaluated for promotion pursuant to the DEA's Personnel Manual Special Agent promotion policy issued on June 9, 1992." Appx406.

The Agency has not refuted, with record evidence, Knox's assertion that had he been considered for promotion at the earlier, *correct* eligibility date of February 2004, his promotion would have been reasonably certain. Appx1277-1280. Once Knox met his burden to show his WGI was delayed due to qualifying military service, the Agency was required to present evidence it would have denied the promotion to GS-13 anyway. *Sheehan v. Dep't of the Navy*, 240 F. 3d 1009, 1013. The Agency offered no such record evidence to support that position, and instead argued Knox's burden was to show the promotion was "automatic" or an "entitlement". Resp. Br. at 5. The AJ embraced this incorrect standard and denied Knox relief on his promotion claim. Appx2-3.

The AJ cites no basis to cite the nearly impossible standard of an "entitlement" to promotion and the Agency produced no probative or supportable evidence as to why Knox's promotion was not reasonably certain under the earlier policy. Appx11-12. Instead, the AJ agreed with the Agency's contention that since

7

promotions were not automatic and any failure to submit the package timely was a "random administrative error" (Appx11-12), the Agency avoids liability. This excused the Agency from providing any actual justification for what was, at best, negligence in its failure to follow its own regulations. Appx6, Appx11-12, Appx835, Appx857, Appx1315-1319, Pet. Br. at 9. For the reasons stated here and in his earlier Brief, Knox seeks reversal of the Board's decision.

The Appellee's primary argument, which essentially regurgitates the Board's opinion, simply ignores all the record evidence Knox presented contradicting it. Specifically, the Appellee's brief claims that, "Mr. Knox had 'not shown that it is more likely than not that the delay was based on discrimination for uniformed service as opposed to random administrative error.'" Appx11-12. This is simply untrue and flips the USERRA burden on its head.

Knox's DEA leave status was "LWOP – US." That is, he was on military leave when the Agency improperly delayed his step increase. Appx7, Appx704-705. The Agency admitted that the reason for the WGI delay was due to Knox's active-duty service. Appx405-406. As such, he proved that his military status was the reason for the Agency action. That action in turn delayed his promotion package. Appx1316-1319. Simply put, but for the denial of a right related to his service and to his reemployment, Knox would have been promoted.

The burden should then have shifted to the Agency to identify why Knox was not promoted, not to Knox to disprove every self-serving conjecture as to why that did not happen. *See Erickson v. Postal Serv.*, 571 F.3d 1364, 1368 (Fed. Cir. 2009); *Sheehan v. Dep't of Navy*, 240 F.3d 1009, 1012 (Fed. Cir. 2001) (Employer must show, as an affirmative defense, that it would have taken the action it took in any case, despite employee establishing military service as factor in employment decision to defeat USERRA claim).

The Agency meekly contends that, "the record evidence supports the board's determination that the delayed WGI was attributable to administrative error, not Mr. Knox's military service." Resp. Br at 14. Where this conclusion is actually supported is a mystery and it allowed the AJ to pull a legal rabbit from an imaginary hat, as there is no supportable evidence that Knox's military service was not the cause for the "administrative error." Indeed, the Agency itself admits that "the reason SA Knox's step increase to GS-12 Step 3 was delayed was due to the fact he had been serving on active duty during the time in which the step increase was to take place." Appx406. To be clear, it was Knox's active-duty deployment that led to the WGI delay, not some unexplained, "random" administrative error.

Thus, Knox has met his initial burden that his "military service is a motivating factor for an adverse employment action if the employer 'relied on, took into account, considered, or conditioned its decision' on the employee's

military-related absence or obligation." *Erickson v. U.S. Postal Serv.,* 571 F.3d 1364, 1368 (Fed.Cir.2009) (quoting *Petty v. Metro. Gov't of Nashville–Davidson Cty.,* 538 F.3d 431, 446 (6th Cir. 2008)); *Sheehan v. Dep't of the Navy,* 240 F.3d 1009, 1013 (Fed. Cir. 2001).

The AJ also failed to make the connection between the denial of a right or benefit of employment under the escalator principle of USERRA, (the WGI) with the subsequent denial of the GS-13 promotion package submission. *See* 5 C.F.R. § 353.106. The AJ determined that Knox failed to proffer any evidence of discriminatory motivation or intent. Appx13. But such a showing of animus is not required to sustain a reemployment claim, and improperly elevated Knox's burden on his discrimination claim in any event.

First there is an issue as to whether the denial of the WGI, in violation of the escalator principle and Knox's reemployment rights, also included the failure to promote, which was a question the AJ never fully addressed. Because the denial of the WGI formed the basis for the ultimate denial of the promotion, the AJ should have correctly applied reemployment and discrimination analysis to Knox's promotion claim. The AJ held that the delayed WGI was a reemployment violation under USERRA. Thus, even though Knox was not necessarily entitled to promotion "automatically" if he was prevented from submitting his promotion

packages because of the denial of the WGI, then the promotion delay too could be considered a form of reemployment violation.

Second, the AJ made a finding of USERRA discrimination virtually impossible, apparently requiring an admission of discriminatory intent to prove such a claim. But discrimination "may be proven by either direct or circumstantial evidence." *Sheehan*, 240 F.3d at 1014. Discriminatory motivation under USERRA may be reasonably inferred from a variety of factors, including proximity in time between the employee's military activity and the adverse employment action, inconsistencies between the proffered reason and other actions of the employer, an employer's expressed hostility towards members protected by the statute together with knowledge of the employee's military activity, and disparate treatment of certain employees compared to other employees with similar work records or offenses. *Id*. "In determining whether the employee has proven that his protected status was part of the motivation for the agency's conduct, all record evidence may be considered, including the agency's explanation for the actions taken." *Id.*

The *Sheehan* factors are not conjunctive, and employee need not prove they all exist, but instead, must show that at least one of them does. Here Knox showed proximity, disparate treatment, and statements from supervisors that expressed that they were aware the package was improperly delayed. The Agency for its part, never asserted a real defense, and it categorically did not show as an affirmative

defense that it would have taken the same action without regard to the employee's military service." *Erickson,* 571 F.3d at 1368; *see* 38 U.S.C. § 4311(c)(1). "An employer therefore violates section 4311 if it would not have taken the adverse employment action but for the employee's military service or obligation." *Erickson,* 571 F.3d at 1368.

Finally, the Agency's own policies related to return from active-duty service were violated by the delay in processing the WGI. Appx1249-1250. The Agency failed to follow its own policies and the escalator principles under USERRA. *See*, *McMillan v. Department of Justice*," 812 F.3d 1364 (Fed. Cir. 2012).

## II.    The AJ's Decisions Limiting Discovery were an abuse of discretion which prejudiced Knox.

The Respondent basically ignores the case law that supports a finding that the AJ abused discretion in putting his hand on the discovery scale. An AJ abuses discretion when they improvidently restrict discovery. *Jenkins v. EPA*, 118 M.S.P.R. 261 (2012) (denial of depositions in whistleblower retaliation case by AJ severely limited appellant's discovery and presentation of witnesses and prohibited appellant from fully presenting evidence in support of her allegations); *Mangano v. Department of Veterans Affairs*, 104 M.S.P.R. 316 (2006) (improper restriction of discovery held abuse of discretion); *Kiser v. Department of Education* 66 M.S.P.R. 372 (1995) (denial of information sought by motion to compel without supporting explanation abuse of discretion); *White v. Government Printing Office*, 108

M.S.P.R. 355 (2008) (AJ setting more restrictive deadline than authorized by Board regulations for motion to compel, precluded ability of appellant to present evidence of discrimination was reversible error, timing of motions is set by Board). *See* Pet. Br. at 33.

The Respondent does not address these cited cases, nor does the Respondent address the central premise that the AJ restrictions were highly detrimental to the Appellant, who bore the initial burden of proof under *Sheehan*. The AJ provided no legitimate basis for prohibiting discovery and joint motions regarding discovery that sought reasonable deadlines and procedures during the height of a global pandemic that brought the nation and the world to a standstill.

Nor does the Respondent truly address the AJ's apparent bias in these rulings, which prejudice Knox far more than the Agency. It should be noted that it was the AJ himself, who was apparently affronted by a legitimate objection to his rulings, contended that the Appellant had not established bias or grounds for recusal. Appx1254-1256. Indeed, the AJ's *sua sponte* response to the objection was deeply personal; it admitted what the AJ had said to Appellant, but chided Appellant for not establishing bias. It was the AJ's own comments in this regard, that cemented an appearance that the AJ was being less than even handed. If the AJ is permitted to cut the Board's discovery deadlines from ten days to five on a whim, then the Board's regulations are meaningless. 5 C.F.R. §1201.73(d)(3). The

Respondent's Brief does not address the case law cited, nor the actual weight of Appellant's chronology that shows repeatedly and unsupported lopsided rulings.[4] *See* Resp. Br. at 30-34, 43-48; *Sarro & Assocs., Inc. v. United States*, 152 Fed. Cl. 44, 58 (2021) ("A party's failure to raise an argument in an opening or responsive brief constitutes waiver.").

### III.    Knox's Established Reasonable Certainty for GS-13 Promotion.

Knox met his burden to demonstrate his promotion was reasonably certain. The AJ's decision and findings otherwise are not supported by substantial evidence and inconsistent with relevant precedent. Knox demonstrated, and the AJ found, that his WGI was untimely due to his military service. Appx1-3. But for the untimely WGI, Knox's GS-13 promotion application would have been reviewed under the more favorable framework from February 2004, rather than the later, less favorable framework the Agency later adopted. *See* Resp. Br. at 5-6; *see also* Appx305-306, Appx174.

---

[4] These rulings continued post-hearing. The AJ made Appellant file an extensive attorney's fee petition to address a potential fee award because he prevailed on at least part of his claims. After expending dozens of hours on this task, the AJ then declared he would hold the matter in abeyance pending the appeal, which had been filed at the time he requested the fee petitions in the first instance. Pet. Br. at 1, 46 at n.8.

Indeed, the DEA's own policies required Appellant to have a timely WGI granted while he was absent to complete his military service. Appx1285. The DEA's "Guide to Processing Personnel Actions" stated in relevant part:

> The DEA considers various scenarios "to determine whether time in nonpay status affects the employee's benefits or status." However, "[i]f absence is to perform duty with the uniformed services and employee exercises restoration rights, . . . there is no penalty for the nonpay status – time is credited for length of service purposes just as though the employee had remained in pay and duty status." Appx1285.

The Agency incorrectly asserts, "…the record evidence supports the board's determination that the delayed WGI was attributable to administrative error, not Mr. Knox's military service." Resp. Br. at 14. This ignores that the administrative error was due to Knox's military service and *the Agency admitted the delay was due to Knox's active-duty service.* Appx406. Knox provided uncontested documentary evidence regarding his LWOP – US status. *See* Pet. Br. at 26; *See also* Appx596-601, Appx643-644, Appx689-690. Knox also stated he had contacted his supervisor to ensure his WGI would be processed timely before he was deployed in November 2002. Appx99-100. It was not. Appx102-105.

Knox provided uncontested written evidence that he had demonstrated an "acceptable level of competence" and should be awarded the increase. Appx100, Appx1285-1286. In the Agency produced SF-50, Box 45 stated, "[e]ffective date adjusted due to excess time in nonpay status of 312.00 hours." *Id*. Based on these actual records it is clear Knox's creditable service time was improperly calculated

15

as non-creditable time and this delayed his WGI. *Id*. The AJ's contention that, "appellant did not show that it is more likely than not that his uniformed service played a role in the delay of his WGI[,]" (Appx16) is simply false. Appx100, Appx102. The reason for the delay was a mistake due to incorrect processing of creditable nonpay time from military service.

The Agency did not counter any of this but merely stated, "the computer system in place at the Office of Personnel Management in 2003 generated the notification on Appellant's SF-50B that indicated Appellant had excess time in nonpay status." Appx1286. The Agency also referenced a document, "Chapter 16. Return to Duty from Nonpay Status," and a direction which addresses "Effect of Nonpay Status on Service Dates." *Id*.

Under the referenced document, any remark about "excess' time" is appropriate when the "[d]ue date for within grade increase is adjusted due to nonpay status which is *not creditable*." *Id*. But Knox's service time while deployed *was creditable* as a matter of law and DEA policy. As he articulated clearly in his closing brief, "…the delay in Appellant's Grade 12, Step 3 WGI was solely due to the Agency's error in counting time on LWOP – US as not creditable time rather than creditable time." Appx1289. This time was processed incorrectly as "excess time in nonpay status" by the Agency, and Knox's WGI delay was due to Agency error because of his military service during that time period. Knox's prior WGIs

had been timely processed; it was only his WGI due while he was serving the Air Force that was delayed. Appx100-106, Appx1037.

The Board concluded that Knox failed to show his military service was the reason for the WGI delay. Appx16. This is wrong. Appx406. In discovery, the Agency admitted Knox's active-duty service was the reason for the delay. *Id*. For clarity, the entire request for admission and Agency is quoted below (Appx406):

> Request for Admission 15: Admit that the reason SA Knox's step increase to GS-12 Step 3 was delayed was due to the fact he had been serving on active duty during the time in which the step increase was to take place.

> Response: Admit.

In other responses, the Agency made the below admissions:

> Request for Admission 8: Admit that under the escalator principle of USERRA, SA Knox should have received his within-grade step increase to GS-12 Step 3 without delay in February 2003.

> Response: Admit.

> Request for Admission 9: Admit that if SA Knox had been on continuous pay status from November 2002 through February 2003, he would have been eligible for a within grade step increase to GS-12 Step 3 on February 23, 2003.

> Response: Admit.

> In light of these admissions, these facts are established as true and binding on the Agency. *See* Fed. R. Civ. P. 36(a). Accordingly, the Board should have granted Knox's discrimination claim related to the WGI, and for reasons explained below, his promotion claim.

> Finally, the Agency erred in asserting confusion over whether SAC Bott had

approved Knox's request for promotion. Resp. Br. at 19. "…it is unclear whether

17

he ever obtained ASAC or SAC approval for his promotion request." *Id*. Knox did not belabor this at length, as the Agency grudgingly admitted in discovery that, "SA Knox's Special Agent in Charge (SAC) approved his promotion to GS-13 in April 2004." Appx406. This admission is sufficient to show Knox had in fact received such approval, which Knox asserted in the underling case, and the Agency did not disprove. Appx709, Appx1294, Appx1305.

### IV. Knox met his burden to demonstrate his promotion was reasonably certain and the Board's decision and findings otherwise are not supported by substantial evidence, and are contradicted by relevant precedent.

The Board's opinion disregards or misconstrues relevant precedent from the Courts of Appeal for the Ninth Circuit, and the Supreme Court. *Huhmann v. Fed. Express Corp.,* 874 F.3d 1102, 1106 (9th Cir. 2017) (quoting 20 C.F.R. §1002.191). *See also Erickson*, 571 F.3d at 1369 and *Hayden v. Dep't of the Air Force,* 812 F.3d 1351, 1360 (Fed. Cir. 2016). The notion that such appellate precedent on USERRA should have no impact on the Board's jurisprudence in USERRA cases would produce an absurd result. The MSPB is a forum intended to vindicate and protect the Merit System itself. To create a lower and less favorable standard there than in the district court erodes USERRA's basic promise: that service members ought not to be disadvantaged due to their service. The AJ disregarded relevant appellate precedent and applied an incorrect higher "entitlement" standard to Knox's claims. That decision must be reversed.

18

The Agency reliance on *Hayden v. Dep't of the Air Force*, 812 F.3d 1351, 1362 (Fed. Cir. 2016) and *Eby v. United States*, 823 F. App'x 933, 936 (Fed. Cir. 2020) is misplaced. In *Hayden*, the employee sought a desk audit, and a position upgrade, which was ultimately denied by his agency employer. *Id*. at 1351-59. *Hayden* actually undermines the Agency's position because the Federal Circuit remanded for further factual development. *Id*. Specifically, on the employee's discrimination claim, because there was insufficient evidence that the position upgrade was required to be competitive, and whether or not Hayden would have achieved the upgrade had he competed for it, the Court remanded. ("There are no findings as to whether the position could have been noncompetitively upgraded at the time the upgrade was requested. Nor is there any evidence or factfinding as to whether the surplused employee necessarily would have been chosen over Hayden.") *Hayden* at 1361. Thus, in *Hayden*, the employee met his burden on his discrimination claim, and the burden shifted to the agency to show it would not have promoted the employee regardless of his military service. There, the Board's failure to develop the factual record concerning the nature of the competition for promotion resulted in remand on Hayden's discrimination claim, which was not a victory for the employer on that claim.

*Hayden* is distinguishable from the instant case in an additional critical way, namely, the position upgrade itself was not a "generally granted benefit" and it was

not reasonably certain that employee would have received upgrade. *Hayden* at

1352-58. Accordingly, Hayden was not entitled to *reemployment* at the upgraded

position level when he returned from military leave under USERRA. *Id.* at 1356.

Hayden could still pursue a *discrimination* claim under USERRA. Knox has

presented ample evidence that eligible Journeyman Special Agents were almost

always promoted to GS-13 positions if they were eligible under the DEA policies

in place in February 2004. Accordingly, *Hayden* actually supports Knox's position

on his discrimination claims and undermines the Agency's arguments.

 The Agency also relies on *Eby v. United States,* 823 Fed.Appx 933, to argue

Knox failed to show reasonable certainty. Resp. Br. at 17-18. First and foremost,

*Eby* was a breach of contract case about damages arising from underlying

disability discrimination litigation, and was not a USERRA case. *See Eby* at 933-

937. The Agency acknowledged this. *See* Resp. Br. at 18. Accordingly, *Eby* is

inapposite on that basis. Second, *Eby* concerned a competitive promotion process

to a GS-14 role, and evaluated her expectation damages for claimed back pay from

the agency's failure to award a GS-14 role, a highly competitive process. In *Eby*,

the employee had only showed there was a chance of promotion, not that the

promotion was reasonably certain. *Id*. at 936. Knox's situation does not involve a

competitive promotion process. Concerning the promotion at issue here, if Knox

had been eligible to apply earlier, then his promotion was reasonably certain for

eligible GS-12 Step 3 Special Agents. Pet. Br. at 20. (Completed promotion packages with required approvals would, "…normally be accepted after review by the Position Review Committee."). *See also* Appx6, Appx1114.

This Court has previously held that, "[Laches] is an equitable defense, controlled by equitable considerations, and the lapse of time must be so great, and the relations of the defendant to the rights such, that it would be inequitable to permit the plaintiff to now assert them." *Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 988 F.2d 1157, 1162 (Fed. Cir. 1993) quoting *Halstead v. Grinnan*, 152 U.S. 412, 417 (1894). The Agency asserts, but never actually provides evidence of any material prejudice. Indeed, the Board found the Agency had failed to show prejudice and denied laches as a defense to Knox's claims with one glaring caveat.

The Agency's argument that Knox's discussion of its laches defense is "largely moot" misapprehends the main points Knox is making in addressing the defense. Resp. Br. at 29. Laches is an affirmative defense that must be supported with actual record evidence of prejudice, not mere speculation and argument. The Agency's actual evidentiary support for any laches defense was the Agency Narrative, where it referenced laches without elaboration. The Agency refused to identify any specific witness or document that could not be located due to the delay. Nor did it offer examples of material prejudice.

21

When asked about any affirmative defenses in discovery, the Agency gave no substantive reply, it merely stated, "[d]iscovery is ongoing, and the Agency will supplement this response at the close of the discovery period." Appx1240 (*See* "Agency Response to Interrogatory No. 22"). Knox diligently sought updated responses in a letter to the Agency prior to the close of discovery and asked the Agency to supplement its responses as promised. Appx1240. The Agency did not respond to the letter, and did not supplement its prior response. *Id*. Thus, when Knox alleges that the Agency abandoned its defense, that is because the Agency never disclosed details or actual evidence of prejudice. Indeed, the Agency managed significant documents and identified several key witnesses in the case.

Knox addresses laches because of how it was discussed in the Board's decision, which rejected a defense of laches, but then bizarrely contradicted itself. Appx15-16.[5] Indeed, the AJ found that, "the agency did not demonstrate that it lost critical evidence due to the passage of time. Because laches requires that the Agency prove both inexcusable delay and prejudice, the Agency's failure to prove

---

[5] Adding to the perception that the AJ was less than even handed was his signal to the Agency at the pre-hearing conference that it should focus on laches. Appx1237. The Agency failed to provide any evidence as to how it been prejudiced by the delay, something the AJ initially noted. Appx9. Indeed, the Agency failed to state, other than in generic terms, why it could not reconstruct what happened to Appellant's promotion package, nor did the Agency present evidence on whether Appellant could have been promoted in subsequent years beyond 2004.

prejudice precludes a finding of laches." Appx10. Despite finding that the Agency had not demonstrated material prejudice, the AJ dropped a footnote contradicting that finding. Appx16. In Footnote 2, the Initial Decision stated that if Knox showed his military service was a substantial or motivating factor then the AJ "would find the agency could establish prejudice for purposes of laches." Appx16, at n.2. This statement, concerning difficulty in identifying witnesses and concerns over "faded memories" is largely undermined by the fact that the Agency did actually identify documents and witnesses relevant to the Agency's promotion policies at the time. *Id.*, *see also* Appx678-679. The AJ's contradictory analysis of laches disregarded Knox's record evidence on reasonable certainty and suggests the AJ would reflexively deny Knox corrective action on remand.

## V.     Affirming the AJ's conduct in ignoring the remedial nature of USERRA undermines its purpose and principles enshrined in law.

The Board's analysis concerning *Huhmann v. Federal Express, and Tilton v. Missouri Pacific Railroad Company*, 376 U.S. 169 (1964) is highly problematic in light of the legislative history of USERRA, and its purpose. Appx15. Those cases involved private sector employers' litigation in federal court and before the Ninth Circuit Court of Appeals or the U.S. Supreme Court. Both cases reaffirmed the core principle under USERRA that reasonable certainty is not the same as absolute certainty. To uphold the higher "entitlement" standard that the AJ applied would mean that in USERRA cases, federal workers face a higher burden than their

private sector counterparts. In other words, even though the federal government is supposed to be a model employer, if the Board's opinion is affirmed, the federal worker would receive fewer protections than are standard in private sector companies. Such a result is inconsistent with the letter and spirit of USERRA and its enabling regulatory scheme.

The AJ's refusal to apply the correct *legal* standard to Knox's claims is an error this Court can and should correct. Under *Whitmore*, this Circuit recognizes that reversal may be appropriate if the Board fails to weigh the record evidence as a whole. *Id*. at 1369-1370.

The evidence shows Knox would have been promoted to GS-13 had his WGI been timely. *See* Pet. Br. at 23-24, Appx705-706, Appx712, Appx769, Appx1316. A timely WGI meant he would have been eligible for promotion under earlier more favorable policies in February 2004. Resp. Br. at 24. Knox also identified a comparator, Special Agent Campbell, who did not serve and was promoted in 2004. Appx895, Appx1153. Knox provided evidence that his previously granted WGIs had all occurred on time. Knox also presented email correspondence between Agency human resources specialists showing the WGI was granted late due to his LWOP – US leave status. Appx1036. Finally, the SF-50 made it clear in box 45 that processing errors regarding his creditable service time was processed as non-creditable service. *See* Appx102 (under "Remarks," it stated,

24

"Effective date adjusted due to excess time in nonpay status of 312.00 hours.").
This was not random, but occurred because of his uniformed service.[6] Given this
record evidence, Knox's promotion to GS-13 was reasonably certain.

The assertion there is record evidence of alternative explanations for the
Agency's failure to promote Knox rests on a false premise. The promotion policy
in effect in April 2004 was perhaps less favorable to Knox, but the only reason he
was forced into that policy was because of the untimely WGI. Appx100, Appx102.
There is no evidence suggesting otherwise, only the Agency's argument and the
citation-free language from the Board's decision. Neither the Agency nor the
Board ever actually attempt to provide documentary proof that Knox is incorrect in
his assertion that his GS-13 promotion was reasonably certain, and instead
criticizes, but never refutes Knox's evidence.

As the Appellant stated in the underlying matter, relevant Board precedent
makes it clear that USERRA required processing of a timely WGI for Knox. This
was a core statutory requirement that the Agency contravened. Specifically, "One
of the purposes of USERRA is to 'minimize the disruption to the lives of persons

---

[6] Recall that "military service is a motivating factor for an adverse employment
action if the employer 'relied on, took into account, considered, or conditioned its
decision' on the employee's military-related absence or obligation." *Erickson v.
U.S. Postal Serv.*, 571 F.3d 1364, 1368 (Fed. Cir. 2009).

performing service in the uniformed services . . . by providing for the prompt

reemployment of such persons upon their completion of such service.'" *Bostwick v.*

*Dep't of Agriculture*, 122 M.S.P.R. 269, ¶ 9 (2015) (quoting 38 U.S.C. §

4301(a)(2))." The U.S. Congress enacted USERRA to reinforce decades long

commitment to uniformed service previously contained in the Veteran's

Reemployment Rights Act ("VRRA") first passed in 1940.

    Numerous U.S. Supreme Court cases have interpreted USERRA or its

predecessor statutes. The escalator principle has been enshrined in the case law

from early in the statute's history. Specifically, the escalator principle was

described by the U.S. Supreme Court in its first case considering the VRRA

unequivocally, "[The returning veteran] does not step back on the seniority

escalator at the point he stepped off. He steps back on at the precise point he would

have occupied had he kept his position continuously during the war." *Fishgold v.*

*Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 284-85 (1946). Here, Knox's

invocation of the escalator principle is supported by decades of precedents.

A review of legislative history illuminates the "reasonable certainty" concept

further:

> The Committee [House Committee on Veterans' Affairs] intends to
> affirm the interpretation of "reasonable certainty" as "a high
> probability." *See Schilz v. City of Taylor, Michigan*, 825 F.2d 944, 946
> (6th Cir. 1987), which has sometimes been expressed in percentages.
> *See Montgomery v. Southern Electric Steel Co.*, 410 F.2d 611, 613 (5th
> Cir. 1969) (90 percent success of probationary employees becoming

permanent meets reasonable certainty test*); Pomrening v. United Air Lines, Inc.*, 448 F.2d 609, 615 (7th Cir. 1971) (86 percent pass rate of training class meets reasonable certainty test). *See* House Comm. Rep. April 28, 2993, H. Rep. No. 103-63, Part 1.[7]

Had Knox's GS-13 promotion package been submitted in February 2004, the first available date he could apply, had the WGI not been untimely, the record evidence shows his promotion was reasonably certain (as explained in cases such as *Pomrening* and *Schilz*). Indeed, journeymen were promoted to GS-13 at rates of between 97-99 percent. Appx894. It is difficult to imagine a more persuasive example of reasonable certainty than a promotion that is granted to those who are eligible at such a high rate. *Id*. Thus, Knox met his burden that his promotion to GS-13 was reasonably certain and the Board's finding otherwise is unsupported by substantial evidence and contradicted by relevant precedent.

USERRA's very first section expresses, "sense of Congress that the Federal Government should be a model employer in carrying out the provisions of this chapter." 38 U.S.C. §4301(b). By law, the federal government should be a model employer, and honor its obligations to those who perform uniformed service. There can be no argument that the Agency was late in granting Knox his WGI, and his military service explains the error. Knox merely seeks what he should have

---

[7] Reprinted in Appendix B-1, *The USERRA Manual*, Kathryn Pictitelli, Edward Still, at 700. (2017 Ed.).

received under USERRA, and requests that this Court require the Board to follow USERRA's basic principles. The Agency should not have delayed Knox's WGI, and Knox has presented sufficient evidence to show that had he been granted a timely WGI, his promotion to GS-13 was reasonably certain. This Court should reaffirm USERRA's core promise: those who serve this country should not be disadvantaged in their employment because of their service.

## CONCLUSION

Knox requests oral argument. For all these reasons, the Court should reverse the MSPB's decision below and enter judgment for Anthony Knox. Should the Court remand, Knox requests that his case not return to AJ Kang, who Knox believes abused discretion, misapplied the law, and showed at least a preferential and less than even handed approach to Knox's claims.

November 20, 2023                              Respectfully Submitted,

                                    /s/Kevin E. Byrnes
                                   Kevin E. Byrnes, Esq.
                                   Grace H. Williams, Esq.
                                              Fluet
                              1751 Pinnacle Drive, Suite 1000
                                      Tysons, VA 22102
                                 Telephone: (703) 590-1234
                                    Fax: (703) 590-0366
                                    Kbyrnes@fluet.law
                                    Gwilliams@fluet.law

                                   *Counsel for Petitioner*

## CERTIFICATE OF SERVICE

I certify that on November 20, 2023, this Reply Brief of Petitioner Anthony Knox was filed electronically using the CM/ECF system and served via the CM/ECF system on registered counsel.

By counsel,

/s/Kevin E. Byrnes
Kevin E. Byrnes, Esq.
Grace H. Williams, Esq.
Fluet
1751 Pinnacle Drive, Suite 1000
Tysons, VA 22102
Telephone: (703) 590-1234
Fax: (703) 590-0366
kbyrnes@fluet.law
gwilliams@fluet.law

*Counsel for Petitioner*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.      This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a) and Federal Circuit Rule 32(a).

This brief contains 6,708 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b).

2.      This brief complies with the or typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

This brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point font, Times New Roman.

/s/Kevin E. Byrnes
Kevin E. Byrnes, Esq.
Grace H. Williams, Esq.
Fluet
1751 Pinnacle Drive, Suite 1000
Tysons, VA 22102
Telephone: (703) 590-1234
Fax: (703) 590-0366
Kbyrnes@fluet.law
gwilliams@fluet.law

*Counsel for Petitioner*